ESSEX ELECTRO ENGINEERS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 480–83C.

United States Claims Court.

Jan. 23, 1984.

Fred Israel, Washington, D.C., for plaintiff. Eugene F. Shine, Israel & Raley, Chartered, Washington, D.C., of counsel.

Alvin A. Schall, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Janis P. Rodriguez, Federal Aviation Administration, Washington, D.C., of counsel.

## OPINION

NETTESHEIM, Judge.

After obtaining a judgment upon an opinion and order declaring it to be the responsive bidder in a procurement conducted by the Federal Aviation Administration (the FAA") and a permanent injunction preventing award of the subject contract to any other bidder, *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277 (1983) (NETTESHEIM, J.), plaintiff Essex Electro Engineers, Inc. ("Essex"), applied for attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981) (the "EAJA"), and RUSCC 81(e).

## FACTS

Essex's suit for declaratory and injunctive relief was commenced on July 26, 1983, culminating in an order entered on August 11, 1983, which, for all practical purposes, was the final action on the merits.[1] The court's opinion detailed the factual background of this application, which is only summarized herein. *Essex Electro Engineers, Inc.*, 3 Cl.Ct. at 279–80.

Essex was the second low bidder in a procurement for engine generator sets. The lowest was Forster Enterprises ("Forster"), and the third lowest bidder was Introl Corporation ("Introl"). Introl protested the FAA's provisional determination that Forster was the lowest responsive and responsible bidder. The General Services Administration (the "GSA") upheld Introl's second protest against the award to Forster and also found Essex's bid to be nonresponsive. After the FAA adopted the GAO's decision, Forster sued in this court for injunctive relief, which was denied. *Forster Enterprises v. United States*, No. 443–83C (Cl.Ct. July 21, 1983) (HARKINS, J.). Essex, which had appeared as an interested party in the Forster and Introl proceedings

---

1. Prior to entry of judgment, defendant moved for reconsideration. Judgment entered upon denial of that motion on September 20, 1983. Defendant advised on September 21, 1983, that the FAA had awarded the subject contract to Essex.

before the GAO, then filed its suit, which was successful.

Forster's and Essex's bids included literature which was neither required nor unsolicited—the two classes of literature for which 41 C.F.R. § 1–2.202.5 (1982), provides evaluation criteria. Instead, the literature was submitted in response to a request in the procurement for descriptive literature to accompany the designation of the engine each bidder proposed to furnish. Thus, it fell into a category of literature submission whose evaluation is unregulated.

The essential difference between Forster's and Essex's cases was that the Forster bid contained literature which on its face disqualified Forster's engine, making Forster's bid nonresponsive, whereas the alternative engines proposed by Essex were not facially nonresponsive. Some of the disqualifying literature in Forster's bid also applied to Essex's first engine, however, and the GAO relied on it in rejecting Essex's bid, despite the fact that the offending literature was not included in Essex's bid. Essex also submitted part of a brochure on the second engine which did not disqualify it. The GAO obtained through the FAA the complete brochure, which indicated noncompliance. During the GAO proceedings, Essex submitted literature commercially available as of bid opening demonstrating that the second engine could be modified to satisfy the specifications. This literature was not considered. Introl, on the other hand, initially did not submit literature with its bid, although its subsequently submitted literature showing Introl's proposed engine to be responsive was considered by the GAO.

## DISCUSSION

*Jurisdiction*

■ Defendant takes the position that jurisdiction is lacking in this court to make an award of costs or attorneys' fees under 28 U.S.C. § 2412(a), (d), because the United States Claims Court, defendant argues, is not a court of the United States. In *McCarthy v. United States,* 1 Cl.Ct. 446, 458 (1983), after an independent review of these jurisdictional arguments in the context of a case that was pending as of October 1, 1982, the date this court came into existence, this court endorsed Judge Wood's rejection of the identical jurisdictional challenge in *Bailey v. United States,* 1 Cl.Ct. 69, 70–74 (1983), *vacated on other grounds,* 721 F.2d 357 (Fed.Cir.1983). The Federal Circuit in *Ellis v. United States,* 711 F.2d 1571, 1574 n. 3 (Fed.Cir.1983), reserved decision on the issue with respect to matters begun on or after October 1, 1982. This court is of the view that the *Bailey* analysis is equally applicable in the context of this case, which was filed with the new Claims Court. Juges Yock and Lydon reached the same conclusion, respectively, in *AABCO, Inc. v. United States,* 3 Cl.Ct. 700, 703 (1983), and *Clark v. United States,* 3 Cl.Ct. 194, 196 (1983) (orders denying EAJA applications).[2]

*The Application for Attorneys' Fees and Expenses*

■ The Federal Circuit has prescribed guidelines for reviewing applications under section 2412(d)(1)(A). Under that statutory provision, a prevailing party, such as Essex, can be awarded attorneys' fees and expenses in any action unless "the position of the United States was substantially justified ... or special circumstances make an award unjust." It is the reasonableness of that position which is the subject of this court's inquiry. *Bailey,* 721 F.2d at 360; *Ellis,* 711 F.2d at 1575–76; *Gava v. United States,* 699 F.2d 1367, 1370 (Fed.Cir.1983). The burden is on the Government, not the applicant, to prove that its position was substantially justified. *Bailey,* 721 F.2d at 359; *Ellis,* 711 F.2d at 1575–76. The reasonableness of the Government's position, however, must be evaluated in light of "all the pertinent facts of the case," including "the decision of the tribunal being reviewed," *Broad Avenue Laundry & Tailor-*

2. Jurisdiction was acknowledged implicitly in *Gould v. United States,* 3 Cl.Ct. 693 (1983) (MILLER, J.), and *Hill v. United States,* 3 Cl.Ct. 428, 429 (1983) (WHITE, S.J.) (orders denying EAJA applications in other post-October 1, 1982 suits).

*ing,* 693 F.2d 1387, 1391 (Fed.Cir.1982) [hereinafter "*Broad Avenue*"]; *see Bailey,* 721 F.2d at 360; *Gava,* 699 F.2d at 1370, and should be measured "against the law as it existed when the government was litigating the case . . . ." *Kay Manufacturing Co. v. United States,* 699 F.2d 1376, 1379 (Fed. Cir.1983).[3]

Defendant's main argument that its litigation position was reasonable is based on the reasonableness of the underlying agency action. A rational basis existed for the FAA's rejection of Essex's bid, according to defendant, because the bid did not constitute an unequivocal offer to provide the engine generator sets required by the specifications and because the descriptive literature Essex submitted on one of the two engines, coupled with the literature accompanying Forster's bid and that which the FAA obtained on its own, demonstrated that neither of the engines could perform at specification. Defendant also argues that the FAA acted on the basis of the GAO's decision (concededly only advisory in this court).

According to the Government, it was reasonable to argue that the court should not look to the treatment of Introl's bid (Introl was allowed to submit literature to counter challenges to the responsiveness of its bid, while Essex was not) "because the question of the responsiveness of plaintiff's bid turned solely on an analysis of plaintiff's bid and not on whether Introl was responsive." Def's Opp. at 12.

Defendant points to language of the court describing the case as "a new animal" —because no regulations govern the treatment of requested, as opposed to required or unsolicited, literature—and as "very complicated." Tr. at 69–70, 63 (Aug. 11, 1983).[4] Defendant also states:

> We supported our arguments with citations to both court decisions and decisions of the GAO, and, while the Court distinguished certain of these decisions, it can certainly not be said that the distinctions made were either so manifest or so compelling as to indicate that a contrary result was "foreordained on the basis of the decisions reported and regulations in force at the time the government litigated the case." *Broad Avenue Laundry and Tailoring v. United States,* 699 [sic] F.2d at 1392.

Def's Opp. at 12–13.

The Government's arguments resting on the claimed rationality of the agency decision, the irrelevancy of the FAA's and GAO's treatment of Introl, and the persuasiveness of the decisional law relied on highlight the anomalous position of the court in evaluating the reasonableness of the Government's litigation position defending a challenge to agency action. If an agency action is deemed irrational, to char-

---

**3.** Consideration of Essex's application for fees and expenses in connection with proceedings before the FAA and GAO and in the *Forster* litigation in this court (in which it was not a party) is foreclosed by the Federal Circuit's decision in *Broad Avenue,* 693 F.2d at 1390–91, and its progeny, *e.g., Bailey,* 721 F.2d at 360; *United States v. Hamilton Enterprises, Inc.,* No. 37–82 (Fed.Cir. Aug. 16, 1983) (per curiam) (order denying EAJA application); *Ellis,* 711 F.2d at 1575; *Electronic Modules Corp. v. United States,* 702 F.2d 218, 219 (Fed.Cir.1983) (per curiam); *Gava,* 699 F.2d at 1371, holding that the court can examine only the Government's position in the suit in this court, not that taken in prior administrative proceedings.

Essex urges that the court follow the majority decision in *Natural Resources Defense Council, Inc. v. EPA,* 703 F.2d 700, 706–12 (3d Cir. 1983), that the position of the Government subject to examination is the agency's prelitigation

position, a view that has commanded the endorsement of a minority of courts of appeals. *See Spencer v. NLRB,* 712 F.2d 539, 546 & nn. 27, 28 (D.C.Cir.1983); *accord Del Mfg. Co. v. United States,* 723 F.2d 980 (D.C.Cir.1983); *Environmental Defense Fund v. EPA,* 716 F.2d 915, 920 (D.C.Cir.1983). The view of *Natural Resources Defense Council* was rejected in *Bailey* because the applicant in that case did not request en banc consideration of the Federal Circuit's decision in *Broad Avenue. Bailey,* 721 F.2d at 360.

Essex also argues that equity entitles it to a fee and expense award for the entire administrative and judicial ordeal. *Spencer v. NLRB,* 712 F.2d at 443–44, makes clear that an award of attorneys' fees against the United States is statutory and not a matter of equity.

**4.** Essex's reply brief restores these comments to their context.

acterize as reasonable the Government's litigation position defending the action's rationality would seem to be inconsistent with the merits determination that the agency decision was unreasonable. Plaintiff so argues. *See Glick v. USCSC,* 567 F.Supp. 1483, 1485 (N.D.Ill.1983) (defendants conceded that decision to defend conduct held to be arbitrary and capricious in summary judgment proceeding made award under EAJA appropriate).

In *Spencer v. NLRB,* 712 F.2d 539, 546–56 (D.C.Cir.1983), the court attempted to define the statutory phrase "the position of the United States" in the context of various types of cases, the first being the type involved here: "Appeals From Agency Actions Under Deferential Standards of Review." 712 F.2d at 552. In a case such as this, in which the Government must justify the reasonableness of its litigation position after a court has given relief to the EAJA applicant on the ground that the agency action to which the Government urged deference was unreasonable, arbitrary, irrational, or capricious, a problem may arise from the failure to distinguish between the agency action itself and the Government's litigation position. As the D.C. Circuit explained:

> [A] court that has just concluded that the agency's action was "arbitrary and capricious" would be hard pressed to rule that its action was nonetheless "substantially justified." The net effect would be that the EAJA would become, for all practical purposes, an automatic fee-shifting provision in these circumstances. That result seems plainly inconsistent with Congress' general objective in enacting section 2412(d)(1)(A): to establish an "intermediate" standard for the allocation of attorneys' fees, one falling somewhere between the English rule [fees ordinarily are awarded to the winning party] and the current American rule [each party to a lawsuit ordinarily bears its own attorneys' fees unless there is an express statutory authorization to the contrary]. More consistent with the purposes of the Act would be a rule whereby a court, when reviewing an EAJA petition arising

out of a case of the sort described ... would ask: Was the agency's litigation position (*i.e.,* its argument on appeal that its promulgation of the regulation was not arbitrary and capricious) substantially justified?

712 F.2d at 552–53 (footnotes omitted).

The dissenting opinion in *National Resources Defense Council, Inc. v. EPA,* 703 F.2d 700, 719 (3d Cir.1983), was of the same view:

> It would be logically difficult to conclude that an action was "arbitrary and capricious" and then to conclude on a motion for fees that the action was "substantially justified." ... That difficulty could result in an almost automatic award of fees in such cases, a result clearly not intended by Congress in passing the EAJA.

(Citation and footnote omitted.)

The trouble is that the distinction between the agency action and position in court "proves immaterial in many cases when the government's litigation position is simply that its underlying actions were proper." *Id.* at 718 (dissenting opinion). In such cases, however, the Government's litigation position that the unreasonable agency action was reasonable is not itself necessarily unreasonable. The Fourth Circuit provided guidance on this point in *Guthrie v. Schweiker,* 718 F.2d 104, 108 (4th Cir. 1983):

> In the district court the government's position generally is established at the administrative level and judicial review is limited to consideration of the administrative record by cross motions for summary judgment. Therefore, the government's position in the district court normally would be substantially justified if, as is usual, the United States attorney does no more than rely on an arguably defensible administrative record. In such a situation, the EAJA would not require an award of attorney's fees. Moreover, entry of summary judgment for the claimant raises no presumption that the government's position was not substan-

tially justified. *See Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 75 (4th Cir.1982). . . .

■ This court holds an award in this case to be inappropriate on two alternative grounds. The first is based on the reasoning of *Spencer,* the dissenting opinion in *National Resources Defense Council,* and *Guthrie.* Although defendant failed in its argument that the agency action was rational, the argument to accord the agency latitude in its procurement decision was not an unreasonable position. On the other hand, defendant's argument that Essex was not treated unfairly was hopeless under the precedents of the Federal Circuit and this court's predecessor, and defendant relied on inapposite case law on the issue of the consideration of the literature submitted with the bid. The decision to defend the rationality of the agency's procurement decision, however, was the hallmark of defendant's litigation position. The issues of fair treatment and appropriate case law were subordinate to the central litigation position of upholding the agency's exercise of discretion. That position was itself reasonable. *Compare Foley Construction Co. v. Army Corps of Engineers,* 716 F.2d 1202, 1205 (8th Cir.1983) (denial of EAJA application recognizing broad discretion given to agency procurement in context of bid protest), *with Matthews v. United States,* 713 F.2d 677, 683 (11th Cir.1983) (grant of EAJA application based on per se violation of applicable regulations).

Defendant's litigation position was also reasonable because as of August 11, 1983, the date declaratory and permanent injunctive relief was ordered, this court's injunctive jurisdiction in connection with bid protest cases was less than a year old. The Federal Circuit had not yet issued a decision confirming or rejecting any trial court's formulation of the judicial deference to be accorded to a contracting officer'. procurement decision in a bid protest suit. Moreover, only four other decisions of the Claims Court had enjoined procurements as of the date of decision in this case.

"For the purposes of the EAJA, the more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." *Spencer,* 712 F.2d at 559; *accord United States v. Hamilton Enterprises, Inc.,* No. 37–82, slip op. at 2 (Fed. Cir. Aug. 16, 1983) (order denying EAJA application); *Broad Avenue,* 693 F.2d at 1392. The law in this circuit and in the Claims Court during the timeframe in which this case was litigated was not such as to render unreasonable defendant's argument that the court should defer to the agency decision.[5]

The second ground for denying the application is that this case is one in which exigent circumstances make an award against the Government unjust. Defendant did not resist Essex's application for a temporary restraining order, having obtained

---

**5.** Defendant's other arguments are rejected. The issue in this case was not "novel." This case differed from many others in that it involved requested, and not required or unsolicited, literature. Nonetheless, the agency erred under the standards governing consideration of unsolicited literature, which is more analogous to requested literature. That Judge Harkins rejected Forster's challenge is irrelevant, because the Forster bid was deemed nonresponsive on the ground that the requested literature submitted with the designated engine showed facial noncompliance, which was not the case with the literature submitted by Essex. Judge Yock's denial of the EAJA application in *AABCO* does not help defendant's argument because the court in that case found it necessary to conduct an evidentiary hearing and credited

the views of the parties' respective experts. *AABCO,* 3 Cl.Ct. at 704.

It is true that defendant succeeded on two legal theories advanced by Essex, *i.e.,* that the contracting officer unnecessarily adapted the GAO decision and that the court had jurisdiction to order mandatory injunctive relief. The Government's limited success on these issues in the circumstances of this case may be pertinent not to liability for fees, but to the amount of any award. *Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark,* 720 F.2d 1475, 1481 (9th Cir.1983); *see Goldhaber v. Foley,* 698 F.2d 193, 197 (3d Cir.1983). *But see Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) (court's rejection of alternative legal grounds not a sufficient reason for reducing a fee).

the agency's agreement to defer the contract award for a period of time sufficient to allow for a hearing on the motion for preliminary injunction. Defendant made only one filing, its dispositive motion submitted on August 5, 1983, within eleven days of the filing of the action on July 26, 1983. Oral argument was presented six days later, followed at once by the court's order, yielding an aggregate 16 days from date of filing to date of decision. In the normal course, the United States is permitted 60 days within which to answer a complaint.

This court's bid protest jurisdiction forces the Department of Justice (if the agency is represented by it) to come into court on short notice to defend an agency's procurement decision, despite lack of acquaintance with the matter. See *AABCO,* 3 Cl.Ct. at 703–04. The usual process of case investigation by the attorney charged with defending the Government, which frequently leads to interposition of the Department's view that the agency action cannot be defended in court, rarely can be available if the case is briefed, argued, and finally decided within 16 days. One of the purposes of the EAJA is to deter the United States' iterating an agency position through the courts when it has not made an independent assessment of the reasonableness and legitimate defensibility of the agency's position. *Cf. Spencer,* 712 F.2d at 558; *Natural Resources Defense Counsel,* 703 F.2d at 706–07; *id.* at 719 (dissenting op.). That interest is not served by shifting litigation costs to the Government in a fact-intensive case, such as this one, when the Government attorney does not have a reasonable opportunity to make an assessment of reasonableness and to influence the Department's decision whether to litigate.[6]

6. Although Essex points out that defendant did not claim lack of an adequate time for reflection, defendant did note the expedited procedures attendant to bid protest actions as a factor justifying its litigation position. The court concludes that the length of the period afforded in the circumstances of this case (attributable to the FAA's rush to award the contract) was inadequate.

In the normal course of litigation, a party against whom an injunction issues either has counsel knowledgeable on the subject matter of the litigation and aware of the pending emergency request or counsel who, although not familiar with the instant matter, has an on-going familiarity with the client's affairs. This is not the case when a federal agency is required to turn to the Justice Department for the defense of an injunction suit, and no useful purpose consistent with the EAJA would be served by treating the Government more harshly than a private party which does not operate under a similar disability, when, as here, no clear-cut violation of statute or regulation is involved.[7] In sum, defendant must have a reasonable opportunity to make "a decision to litigate," H.R.Rep. No. 1418, 96th Cong., 2d Sess., 11, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4989–90, which was not present.

*The Award of Costs*

Essex was awarded its costs, which the Clerk of the Court partially denied. It is unclear whether Essex is asking the court to review the denial of this award. To the extent that is so, the cost application has been reviewed carefully and, for the reasons stated in *Engels v. United States,* 2 Cl.Ct. 166, 167 (1983) (KOZINSKI, C.J.), disallowance of the travel expenses claimed for Essex's president, who apparently appeared to testify, shall stand.

## CONCLUSION

Based on the foregoing, plaintiff's application for attorneys' fees and expenses under the Equal Access to Justice Act is denied.

IT IS SO ORDERED.

7. The Government, however, must abandon its opposition as soon as it becomes apparent that its litigation position is not substantially justified. *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081 at 1087 (2d Cir.1983) (citing *Ellis,* 711 F.2d at 1576–77).