BALDWIN, Circuit Judge.
 

 This is an appeal from a judgment of the United States Claims Court,
 
 Essex Electro Engineers, Inc. v. United States, 4
 
 Cl.Ct. 463 (1984), denying appellant’s application for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982). We hold that the Claims Court possesses jurisdiction to award attorney fees and expenses under the EAJA for cases commenced after October 1, 1982, and, on the merits, we affirm the denial of an award in this case.
 

 Essex Electro Engineers, Inc. (Essex) applied for fees and expenses incurred in a bid protest suit in which Essex obtained a judgment declaring it to be a responsive bidder in a procurement conducted by the Federal Aviation Administration (FAA) and a permanent injunction barring award of the subject contract to any other bidder.
 
 Essex Electro Engineers, Inc. v. United States,
 
 3 Cl.Ct. 277 (1983). The factual background is detailed in the lower court’s opinions, which we only summarize here.
 

 Background
 

 In August 1982, the FAA issued an invitation for bids (IFB) for the production of engine generator sets. The IFB specifications required that the engine run at a maximum synchronous speed of 1200 rpm. Forster Enterprises was the lowest bidder, Essex was the second lowest, and Introl Corporation was third lowest. Forster, in its bid, offered a Cummins engine which, according to its own accompanying descriptive material, did not meet the engine output requirement. Essex offered the same Cummins engine or an Allis-Chalmers engine. Although Essex provided no descriptive literature on the Cummins engine, it did supply two pages of a brochure applicable to a standard model Allis-Chalmers engine but which did not address engine output. The cover letter accompanying the Essex bid stated that, if there were any conflict between the general literature and the IFB specifications, the specifications would control. Introl offered a General Motors engine and supplied no descriptive literature. The FAA provisionally determined that Forster was the lowest responsive and responsible bidder.
 

 Introl initiated a protest before the General Accounting Office (GAO) contending that it was the lowest responsive bidder on the basis that neither the Cummins engine nor the Allis-Chalmers engine met the IFB output requirements. The GAO determined that Forster’s bid was nonresponsive because Forster’s descriptive literature indicated that the Cummins engine would not meet the output requirement. The GAO also found Essex’s bid to be nonresponsive based on the Forster literature showing the Cummins engine unable to meet the output requirement, and on a complete brochure for the Allis-Chalmers engine obtained by the FAA which showed that the Allis-Chalmers engine normally operated at 1800 rpm and that modification would be needed to permit operation at the required 1200 rpm. The GAO refused to consider evidence submitted by Essex during the protest supporting compliance with the output requirement. Introl’s bid was deemed responsive based in part on descriptive literature submitted by Introl during the protest proceedings.
 

 Relying on the GAO decision, the FAA awarded the contract to Introl. Forster unsuccessfully sought in the Claims Court to enjoin issuance of the contract to Introl. Essex then filed suit in the Claims Court asking for injunctive and declaratory relief restraining the FAA from awarding the contract to any bidder other than Essex.
 

 
 *250
 
 The government’s litigating position in the Claims Court consisted of three general arguments:
 

 1) the agency action was rational;
 

 2) the scope of judicial review of an agency’s pre-award procurement decision is very limited and both the agency’s and GAO’s determinations should be accorded strong deference; and
 

 3) Essex was not treated unfairly.
 

 The Claims Court concluded that the agency irrationally determined that Essex’s bid was ambiguous, the FAA and GAO irrationally refused to consider literature proffered by Essex showing compliance, and, therefore, that the agency procurement decision was irrational. The court also determined that the agency decision treated Essex unfairly insofar as literature favorable to Introl was considered but literature supporting Essex was not considered. Essex was awarded injunctive and declaratory relief. Upon determining that Essex was responsible, the FAA awarded Essex the contract.
 

 Two months after the decision, Essex applied for attorney fees and expenses under the EAJA. The government opposed the application contending that the Claims Court lacks jurisdiction to award attorney fees or expenses under 28 U.S.C. § 2412(a) and (d) because that court is not a “court of the United States” as defined in 28 U.S.C. § 451, and that in any event, an award would be inappropriate because the litigating position of the United States was substantially justified.
 

 The Claims Court decided that it had jurisdiction, relying on prior decisions of that court. On the merits, the court denied the application on the ground that although the government had failed in its argument that the agency action was rational, the government’s “argument to accord the agency latitude in its procurement decision was not an unreasonable position.” As an alternative ground for the denial, the court found that exigent circumstances made an award of fees and expenses against the government unjust.
 

 Appellant Essex’s arguments on appeal include: the government’s position in defending the agency procurement decision was unreasonable because the agency committed a
 
 per se
 
 violation of the applicable regulations; the government failed to sustain its burden of proving substantial justification especially since the Claims Court found the agency decision irrational; the Claims Court decision improperly bars an award under the EAJA in suits brought for injunctive relief; and the court erred in deciding that an award of fees, under the circumstances, would be unjust.
 

 The government argues that the Claims Court lacks jurisdiction to award EAJA fees in cases commenced in that court after October 1, 1982, and with respect to the merits, argues that its litigating position was substantially justified.
 

 We deal with jurisdiction first.
 

 OPINION
 

 A.
 
 Jurisdiction
 

 In
 
 Ellis v. United States,
 
 711 F.2d 1571 (Fed.Cir.1983), we held that the Claims Court had jurisdiction to award fees under the EAJA in a transitional case begun before the Court of Claims, which was subsequently carried over by statute to the Claims Court, and then decided by that court after October 1,1982.
 
 Ellis
 
 left open the jurisdictional question for actions commenced on or after October 1, 1982.
 
 Id.
 
 at 1574 n. 3.
 

 The government’s argument that the Claims Court has no jurisdiction to award fees under the EAJA is based upon an interpretation of 28 U.S.C. § 2412 in conjunction with sections 1920 and 451 of the same title.
 

 Section 2412 provides in relevant part (emphasis added):
 

 (a) Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States
 
 *251
 
 ...
 
 in any court having jurisdiction of such
 
 action....
 

 (b) Unless expressly prohibited by statute,
 
 a court may award
 
 reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a),
 
 to the prevailing party
 
 in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity
 
 in any court having jurisdiction of such action.
 
 The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 

 * * * * * *
 

 (d)(1)(A) Except as otherwise specifically provided by statute,
 
 a court shall award
 
 to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States
 
 in any court having jurisdiction of that action,
 
 unless the court finds that the
 
 position of the United States was substantially justified
 
 or that special circumstances make an award unjust.
 

 The argument runs that only a court which is authorized to award costs under section 1920 (i.e., a “court of the United States”) has jurisdiction to award attorney fees and expenses under section 2412. Because the term “court of the United States” which is defined in section 451
 
 [1]
 
 does not include the Claims Court, the government contends that the Claims Court therefore lacks jurisdiction.
 

 We reject this interpretation of section 2412, and hold that the Claims Court has jurisdiction to award fees and expenses under the EAJA.
 
 [2]
 
 Subsections (a), (b), and (d) of section 2412 plainly provide that fees and expenses be awarded by “any court having jurisdiction of that action.” None of the subsections refer to the phrase “court of the United States” and we decline the government’s invitation to incorporate that phrase into section 2412. The clause: “a judgment for costs, as enumerated in section 1920 of this title,” heavily relied upon by the government, does not compel such an incorporation. We construe the “as enumerated” clause as delineating the
 
 kinds of costs
 
 that can be awarded — not the
 
 kinds of courts
 
 having jurisdiction over EAJA applications. We simply cannot imply a jurisdictional meaning to this clause when the same provisions contain unambiguous jurisdictional language to the contrary.
 

 Further support can be found in sections 2412(d)(4)(A) and 2412(c) which provide that judgments against the United States for attorney fees, expenses, and costs “shall be paid as provided in sections 2414 and 2517 of this title.” Section 2517, as amended by section 139(k)(1) of the Federal Courts Improvement Act (FCIA), Pub.L, No. 97-164, 96 Stat. 25, 43 (1982), refers to judgments by the United States Claims Court. The FCIA amendment substituted “United
 
 *252
 
 States Claims Court” for “Court of Claims.” We presume that Congress would not have made such a substitution if it intended not to give the Claims Court the same jurisdiction to award EAJA fees as was possessed by the former Court of Claims.
 

 Other provisions also support our conclusion that Congress intended the Claims Court to have jurisdiction of EAJA applications. Section 403(d) of the FCIA, 96 Stat. at 58, requires the Claims Court to determine EAJA fee applications which were pending in the Court of Claims prior to October 1, 1982.
 
 See, e.g., Ellis v. United States,
 
 711 F.2d 1571, 1574 (Fed.Cir.1983) (legislative purpose of § 403 was to provide for the orderly disposition of cases pending on the effective date of the FCIA). It makes sense that Congress would assign EAJA applications during the transition period to a court it intended to have jurisdiction over such applications after transition. Finally, in 28 U.S.C. § 1491(a) (1982), the Claims Court is given jurisdiction over “any claim” against the United States founded upon any Act of Congress. The FCIA amended the prior version of section 1491,
 
 inter alia,
 
 to substitute the Claims Court for the Court of Claims. 96 Stat. at 39-40. We see no limitation in the amendment which carves out Claims Court jurisdiction over EAJA applications.
 

 This court is not persuaded by the government’s reference to a portion of legislative history for section 2412(b) and the decision of the Eleventh Circuit in
 
 Bowen v. Commissioner of Internal Revenue,
 
 706 F.2d 1087 (11th Cir.1983). In House Report No. 96-1418, the following appears:
 

 Section 2412(b) permits a court in its discretion to award attorney fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties. The courts so empowered are those defined in section 451 of title 28, United States Code. This is consistent with the present law in section 2412.
 

 H.R.Rep. No. 96-1418, 96th Cong., 2d Sess. 17,
 
 reprinted in
 
 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4996. In
 
 Bowen,
 
 the court held that the Tax Court lacked jurisdiction to award fees under the EAJA because the Tax Court was not a “court of the United States.”
 

 We presume that the drafters of House Report No. 96-1418, dated September 26, 1980, were not considering the future 1982 FCIA amendments which would substitute (in relevant parts of title 28) the Claims Court for the Court of Claims. It would not be prudent for us to give controlling weight to this single comment when contrasted with the explicit language of section 2412 enacted on October 21, 1980 and the intent of Congress manifested in the 1982 FCIA amendments dealing with the creation of the Claims Court. For these same reasons, we also will not adopt the rationale of the
 
 Bowen
 
 decision.
 

 B.
 
 The Merits of the EAJA Application
 

 Essex launches a two-pronged attack on the Claims Court’s finding that the litigation position of the United States was substantially justified. The first argument is that the government’s litigating position was unreasonable because the agency had committed a
 
 per se
 
 violation of applicable statutes and regulations in rejecting Essex’s bid based on certain “requested” literature. The second argument is that the record does not support the court’s finding that the government’s litigating position was reasonable.
 

 The standard to be applied by the Claims Court for the issue of substantial justification is one of reasonableness, and whether the position the United States took in litigation was reasonable “depends upon all the pertinent facts of the case,” with the burden of showing reasonableness resting on the government.
 
 See, e.g., Bailey v. United States,
 
 721 F.2d 357, 360 (Fed.Cir.1983);
 
 Ellis v. United States,
 
 711 F.2d 1571, 1575-76 (Fed.Cir.1983);
 
 Broad Avenue Laundry & Tailoring v. United States,
 
 693 F.2d 1387, 1391 (Fed.Cir.1982). A finding by the Claims Court that the
 
 *253
 
 position of the United States was substantially justified is reviewed by us under the clearly erroneous standard of review, subject to the qualification that the issue may at times involve a question of law renewable as a matter of law.
 
 Alger v. United States,
 
 741 F.2d 391, 394 (Fed.Cir.1984). One such legal question, a trial court’s ruling on the strength of a legal argument presented by the government, is reviewed by us as a matter of law.
 
 See, e.g., Ellis v. United States,
 
 711 F.2d at 1576-77;
 
 Kay Manufacturing Co. v. United States,
 
 699 F.2d 1376, 1379 (Fed.Cir.1983). Especially applicable to the present case is the rule that this court will not re-examine the government’s position in the administrative proceeding, but rather we look to the government’s litigation stance in the Claims Court.
 
 Ellis v. United States,
 
 711 F.2d at 1575;
 
 Broad Avenue Laundry & Tailoring v. United States,
 
 693 F.2d at 1390-91.
 

 Essex’s first argument, drawn to a theory of a “clear-cut”
 
 per se
 
 violation of regulations, must be rejected. The reasonableness of the government’s litigation position is determined by the totality of circumstances, and we eschew any single-factor approach. In any event, we see no
 
 per se
 
 violation here. The applicable provisions of 41 C.F.R. § 1-2.202-5 (1982), which regulate both “required” and “unsolicited” literature submitted with a bid, do not explicitly provide a standard for the “requested” literature submitted in Essex’s bid. Although the Claims Court concluded that the agency “erred” in not applying the “unsolicited” literature standard to the “requested” literature here, it certainly did not conclude that the agency committed a
 
 “per se
 
 violation.” We agree with the government that there was no
 
 per se
 
 violation because requested literature is not explicitly regulated by the applicable provisions of the Code of Federal Regulations and because Essex has failed to bring to our attention any then-existing case law clearly defining the standard to be accorded “requested” literature.
 

 Essex’s second argument, that the record does not support the finding of substantial justification, relies on the Claims Court’s merits decision which determined that the agency’s procurement decision was “irrational”, that Essex was unfairly treated by the FAA, and that the government’s legal arguments were erroneous.'
 

 The crux of the argument is that the government can never be “substantially justified” in defending an agency decision later held to be “irrational” or arbitrary and capricious. Although the argument has some surface appeal, its fallacy is exposed when one properly distinguishes the agency action in question from the government’s litigating position in court. To adopt Essex’s interpretation would mean that every successful claimant would receive attorney fees and expenses under section 2412(d)(1)(A) — a result clearly not intended by Congress. Instead, we adopt the well-reasoned analysis of this issue found in Judge Nettesheim’s opinion below. The analysis is fully consistent with principles announced by this court, namely, that the issue of reasonableness of the litigating position turns on what support in law and fact the government offered in defending its case, and that the merits of the agency decision constitute only one factor in evaluating the justification for the government’s litigating position in court.
 
 Broad Avenue Laundry & Tailoring v. United States,
 
 693 F.2d at 1391. We conclude that the court correctly determined, based on then-existing case law, that the government’s argument to uphold the agency’s exercise of discretion was reasonable.
 

 Two other factors also support the finding of substantial justification. First, the government did not drag its feet, but rather, cooperated in speedily resolving the litigation:
 

 Defendant did not resist Essex’s application for a temporary restraining order, having obtained the agency’s agreement to defer the contract award for a period of time sufficient to allow for a hearing on the motion for preliminary injunction. Defendant made only one filing, its dis-
 
 *254
 
 positive motion submitted on August 5, 1983, within eleven days of the filing of the action on July 26, 1983. Oral argument was presented six days later, followed at once by the court’s order, yielding an aggregate 16 days from date of filing to date of decision. In the normal course, the United States is permitted 60 days within which to answer a complaint.
 

 4 Cl.Ct. at 468-69.
 
 [3]
 
 A second factor is whether the government departed from established policy in such a way as to single out a particular private party.
 
 See Spencer v. NLRB,
 
 712 F.2d 539, 560-61 (D.C.Cir.1983), ce
 
 rt. denied,
 
 — U.S.-, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). Here, it cannot be said that Essex was singled out. The FAA’s decision to adopt the GAO ruling was consistent with its past practice of giving deference to GAO determinations.
 

 C.
 
 Conclusion
 

 Having considered all of Essex’s arguments, we conclude that the Claims Court did not clearly err in its findings of fact or err in its legal conclusions that the position of the United States was substantially justified. Accordingly, the Claims Court’s judgment denying Essex’s application for attorney fees and expenses under the EAJA is
 
 affirmed.
 

 AFFIRMED.
 

 [1]
 

 . 28 U.S.C. § 451 (1982) provides in relevant part:
 

 The term "court of the United States” includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.
 

 The judges of the United States Claims Court are appointed for terms of 15 years (28 U.S.C. § 172(a) (1982)) and, thus, the court does not fall within the above definition.
 

 [2]
 

 . On October 1, 1984, subsection (d) of section 2412 was automatically repealed by the sunset provision contained in section 204(c) of Pub.L. No. 96-481:
 

 Effective October 1, 1984, subsection (d) of section 2412, as added by subsection (a) of this section [section 204 of Pub.L. No. 96-481], is repealed, except that the provisions of that subsection shall continue to apply through final disposition of any action commenced before the date of repeal.
 

 It is clear from the language that subsection (d) continues to apply to the present case because the "action [was] commenced before the date of repeal.”
 

 [3]
 

 . Although the Claims Court considered this factor under its alternative holding of exigent circumstances making an award against the government unjust, it is also a relevant factor for determining substantial justification.