McArthur JONES, Martin M.
KARNAS, Appellants,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

Nos. 90–58, 90–312.

United States Court of Veterans Appeals.

Argued Jan. 15, 1992.

Decided March 13, 1992.

William G. Smith, Los Angeles, Cal., for appellant McArthur Jones.

Barton F. Stichman, with whom Ruth Eisenberg, Washington, D.C., was on the pleadings, for appellant Martin Karnas.

Douglas R. Wright, with whom Charles A. Horsky, Ruth Eisenberg, Barton F. Stichman, Gershon M. Ratner, Martha Bergmark, and Steven P. Hollman, Washington, D.C., were on the brief, for the Nat. Legal Aid and Defender Ass'n, Nat. Veterans Legal Services Project, Vietnam Veterans of America, Inc., and Washington Council of Lawyers as amici curiae.

Lawrence B. Hagel, Washington, D.C., and Edward R. Heath, St. Petersburg, Fla., filed a brief for the Paralyzed Veterans of America and the Disabled American Veterans as amici curiae.

Thomas W. Turcotte, San Francisco, Cal., filed a brief for the Veterans Assistance Center Legal Project as amicus curiae.

David W. Ewing and Elinor Roberts, San Francisco, Cal., filed briefs for Swords to Plowshares as amici curiae.

David W. Engel, of the Dept. of Veterans Affairs, and Michael E. Robinson, of the Dept. of Justice, with whom James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, Peter M. Donawick, Jeff Corzatt, Kerwin Miller, and Stuart M. Gerson, of the Dept. of Veterans Affairs, and Asst. Atty. Gen., William Kanter, of the Dept. of Justice, Washington, D.C., were on the pleadings for appellee.

Before NEBEKER, Chief Judge, KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS and STEINBERG, Associate Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. MANKIN, Associate Judge, filed a dissenting opinion.

NEBEKER, Chief Judge:

After decisions on the merits in *Jones v. Derwinski*, 1 Vet.App. 210 (1991), and *Karnas v. Derwinski*, 1 Vet.App. 308 (1991), appellants filed motions under portions of the Equal Access to Justice Act (the EAJA), 28 U.S.C. § 2412, for, respectively, a bill of costs under section 2412(a) and (b), and an award of attorney fees and expenses under section 2412(d). Since both require the Court to determine the applicability of the EAJA to proceedings in this Court, the two cases have been consolidated for these purposes. We hold that the EAJA does not apply to proceedings in this Court, because the EAJA does not contain an unambiguous waiver of sovereign immunity as to such proceedings.

## I.

The EAJA allows certain parties in litigation with the United States to recover costs and attorney fees. The relevant subsections of section 2412 provide, in pertinent part:

(a) ... a judgment for costs, as enumerated in section 1920 of this title, ... may be awarded to the prevailing party in any civil action brought by or against the United States ... in any *court having jurisdiction of such action.*

(b) ... *a court* may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States ... in *any court having jurisdiction of such action.*

(c)(1) Any judgment ... for costs pursuant to subsection (a) shall be paid as provided in sections 2414 and 2517 of this title

. . . .

(2) Any judgment ... for fees and expenses of attorneys pursuant to subsection (b) shall be paid as provided in sections 2414 and 2517 of this title, except that if the basis for the award is a finding that the United States acted in bad faith, then the award shall be paid by any agency found to have acted in bad faith. . . .

(d)(1)(A) ... *a court* shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action ..., including proceedings for judicial review of agency action, brought by or against the United States in *any court having jurisdiction of that action,* unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412 (1991) (emphasis added). To a certain extent, these subsections implement the "English rule" where the loser pays the legal fees and costs of the winner. The aim is "to eliminate for the average person the financial disincentive to challenge unreasonable governmental action." *Commissioner, INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990).

Appellants and several amici urge that since the EAJA's objective is to eliminate financial disincentives to parties seeking to protect themselves from unjustified government action, the term "court having jurisdiction over such [civil] action", which appears essentially in each of the operative subsections of section 2412, must be read to include this Court. When confronted recently with a similar question in *Ardestani v. INS,* — U.S. —, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991), as to the scope of the administrative agency portion of the EAJA (5 U.S.C. § 504), the Supreme Court held that since the EAJA

renders the United States liable for attorneys fees for which it would not otherwise be liable ... it thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States.

*Ardestani,* 112 S.Ct. at 521. *Ardestani* then established the principles of statutory construction governing interpretation of the EAJA. The Court said:

We have no doubt that the broad purposes of the EAJA would be served by making the statute applicable to deportation proceedings. . . . But we cannot extend the EAJA to administrative deportation proceedings when the plain language of the statute ["under section 554" of the APA], coupled with the strict construction of waivers of sovereign immunity, constrain us to do otherwise.

*Id.* At the same time, the Court continued to recognize "that, once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to 'assume the authority to narrow the waiver that Congress intended.'" 112 S.Ct. at 520 (quoting *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979)). *See also United States v. Nordic Village, Inc.,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (citing *Ardestani* and reaffirming the "traditional principle" of strict construction

that sovereign immunity waiver requires "unequivocal expression ... in statutory text").

Our resolution of the issue presented by these consolidated cases must be guided by these principles governing the waiver of sovereign immunity. We have little doubt that the purposes ascribed to the EAJA would be achieved by extending 28 U.S.C. § 2412 to proceedings in this Court; however, given the premise that waiver of sovereign immunity must be strictly construed in favor of the United States, we must determine whether the whole of section 2412 is clear regarding its applicability to this Court. If not, we are faced with statutory ambiguity and must leave such an extension to possible future legislative action. *Ardestani,* 112 S.Ct. at 521.

We turn to three reasons which have led us to find ambiguity in the EAJA warranting application of the rule against implied waiver of sovereign immunity. They are the Act itself, the legislative history, and division among the courts of appeals construing its terms.

## II.

Despite the apparent plain meaning of both subsections (a) and (b) of section 2412 in extending to "any court having jurisdiction over such matter" authority to award costs and reasonable fees and expenses of attorneys, subsection (c) severely curtails the applicability of subsections (a) and (b). When coupled with 28 U.S.C. §§ 2414 and 2517, subsection (c) authorizes payment of judgments only in the case of such awards by the "United States Claims Court", "a district court or the Court of International Trade". 28 U.S.C. §§ 2414, 2517. *See Essex Electro Eng'rs Inc. v. United States,* 757 F.2d 247 (Fed.Cir.1985). No provision authorizes payment of a judgment for such an award made by this Court.

Hence, we find substantial ambiguity as to the applicability of subsections (a) and (b) to this Court. For different reasons, we find ambiguity as to the application of subsection (d). An argument could be made that subsection (d), if read in isolation, applies to proceedings in this Court because

we are a "Court having jurisdiction of [the] action" and because awards and judgments under § 2412(d) are not limited by subsection (c) (indeed, § 2412(d)(4) provides a separate payment authority for subsection (d) awards). However, an examination of the development of the EAJA and the specific amendments to, and in connection with, the 1980 original enactment, shows that when Congress has provided for the application of the EAJA to analogous litigation (Claims Court, Tax Court, Social Security Administration (SSA) decision review in district courts), it has done so by specific, affirmative legislation.

In 1982, the Tax Court was given its own EAJA-type provision. Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 292(a) (1982); 26 U.S.C. § 7430; 28 U.S.C. § 2412(e). Similarly, when the EAJA was reenacted in 1985, the Claims Court was specifically included. Pub.L. No. 99–80, § 2, 99 Stat. 183, 185 (1985); 28 U.S.C. § 2412(d)(2)(F). The legislative history of the reenactment notes the intervening enactment of the Federal Courts Improvement Act of 1982 (FCIA), which abolished the Article III Court of Claims and established the United States Claims Court under Article I in its place. "Since some question has been raised about the jurisdiction of the U.S. Claims Court to make [EAJA] awards ... this amendment clarifies the jurisdictional issue and codifies existing law." H.R.Rep. No. 120, 99th Cong., 1st Sess. 17–18 (1985), U.S.Code Cong. & Admin.News 1985, pp. 132, 146.

As to Social Security Act administrative decisions reviewed in federal district court, the 1985 reenactment of the EAJA provided specifically that attorney fees and other expenses may be awarded under the EAJA, in a case where the attorney claims a contingent fee from an SSA award to a claimant, only if the attorney "refunds to the claimant the amount of the smaller fee." Pub.L. No. 99–80, § 3, 99 Stat. 183, 186 (1985). Substantial similarity exists between the nature of most cases appealed to this Court and such Social Security reviews and between the contingent attorney-fee-agreement provisions applicable to the two

types of appeals (38 U.S.C. § 5904 (formerly § 3404) and 42 U.S.C. § 406; S.Rep. No. 100–418, 100th Cong., 2d Sess. 69 (1988)). Consequently, the enactment of the special coordination provision between EAJA fees and contingent fees in Social Security cases creates considerable additional ambiguity as to whether the Act was intended to authorize the availability of EAJA fees in this Court without providing for a similar preclusion of double payment to the attorney.

There is no question that Congress was well aware of the issue of attorney fees when it created this Court. Prior to this Court's enabling act (the Veterans' Judicial Review Act, Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988) (VJRA)), attorneys were prohibited from charging a claimant more than ten dollars for representation. The VJRA, however, lifted the ten dollar cap and amended 38 U.S.C. § 5904 to provide expressly, but in a limited way, for attorneys to charge and be paid fees by Department of Veterans Affairs (VA) claimants for representation before the VA and this Court. Congress manifested its concern about private attorney fees by giving this Court and the Board of Veterans' Appeals certain authority to order a reduction in fees found to be "excessive or unreasonable", and sharply curtailing contingent-fee agreements. 38 U.S.C. §§ 5904(c), 7263(d) (formerly §§ 4063(d), 3404(c)). Congress also specifically considered a provision which would have granted EAJA-type relief in connection with judicial review of VA claims decisions. See S.Rep. No. 418, 100th Cong., 2d Sess. 68, 69 (1988). Indeed, the Senate had passed such legislation on four prior occasions and did so again in 1988. See S. 330, 96th Cong., 1st Sess. § 401(1) (1979); S. 349, 97th Cong., 1st Sess. § 401(1) (1981); S. 636, 98th Cong., 1st Sess. § 401 (1983); S. 367, 99th Cong., 1st Sess. § 401 (1985). Such a provision was not included in the compromise agreement leading to the ultimate enactment of the VJRA and the creation of this Court.

The *Ardestani* holding was predicated, in part, on "ambiguities in the legislative history" which, the Court held, "reinforced" application of "the limited nature of waivers of sovereign immunity." *Id.* 112 S.Ct. at 518–19. Here, in addition to the lack of a specific waiver of sovereign immunity, there is significant ambiguity in the above history of the legislation creating this Court which raises the same kind of ambiguity as to this Court. This uncertainty is compounded by the split in the circuit courts of appeals on whether the EAJA applies to proceedings in the Article I bankruptcy courts.

In *In Re Davis*, 899 F.2d 1136 (11th Cir.1990), the Eleventh Circuit considered a bankruptcy court's power to award EAJA fees, and held that the bankruptcy court, like the Tax Court, lacked power to make EAJA awards since it was not specifically included. The Court there also pointed out that attorneys could still receive EAJA relief if the bankruptcy judges submitted proposed findings of fact and conclusions of law to the district courts, which, after a de novo review, could ultimately determine the merits of the application and award fees. *See In Re Brickell Inv. Corp.*, 922 F.2d 696 (11th Cir.1991). The Tenth Circuit, in *O'Connor v. United States Dept. of Energy*, 942 F.2d 771 (10th Cir.1991), however, held that the EAJA provided direct coverage in the bankruptcy courts and found the language "any court having jurisdiction of that action" to be plain, simple, and unambiguous. There is no need for us to take sides on this issue; it is sufficient merely to take note of the ambiguity which necessarily arises from the existence of such a split in the circuits.

### III.

Appellants and several amici, as well as our dissenting colleague, argue that the Federal Circuit's opinion in *Essex Electro Eng'rs Inc. v. United States*, supra, controls the disposition of this case. In concluding otherwise, we are mindful that the *Essex* decision is of extreme importance because some of our decisions, and possibly this one on the "interpretation" of the EAJA, are subject to review by the Federal Circuit (38 U.S.C. § 7292).

The *Essex* holding specifically related only to litigation in the Claims Court, an Article I court which succeeded and essentially replaced the Article III United States Court of Claims. *See* Pub.L. No. 97–164, §§ 105–169, 402–03, 96 Stat. at 26–51, 57–58. The transmutation from an Article III to an Article I court raised some doubt as to whether the "new" Claims Court had jurisdiction to enter EAJA awards. It is critical to note that the *Essex* holding was limited to the only Article I court then under the jurisdiction of the Federal Circuit. Moreover, the Federal Circuit noted that the applicability of the EAJA to the Claims Court at that time was plainly indicated by the provisions then in § 2412(c) and (d)(4)(A). Those provisions incorporated the payment provisions of 28 U.S.C. § 2517, which the FCIA had amended to make expressly applicable to the "Claims Court", thereby authorizing payment of EAJA awards made by the Claims Court. *Essex*, 757 F.2d at 251–52. No such provisions provide similarly clear evidence of intent to include this Court under § 2412. Again, mindful that the *Essex* decision is of added import, we have concluded that any analysis in *Essex* that might be read as supporting the general applicability of the EAJA to Article I courts has been eclipsed by the subsequent Supreme Court guidance and holding in *Ardestani*.

## IV.

We find it unnecessary, in light of what has been discussed and held herein, to deal with the question of whether an appeal to this Court is a "civil action", a term of legal art (Fed.R.Civ.P. 1–3), as contemplated in the EAJA. The same is true on the related question of "judicial review of agency action" in subsection (d) which calls into issue the difference between a petition for review of administrative action in the federal circuits, *see Wilkett v. ICC*, 844 F.2d 867 (D.C.Cir.1988), and district court review of other agency action, such as SSA decisions.

Accordingly, the bill of costs is DISMISSED and the motions for attorney fees DENIED.

MANKIN, Associate Judge, dissenting:

In spite of the majority's attempt to explain it away, the law of this Circuit, as expressed in *Essex Electro Eng'rs Inc. v. United States*, 757 F.2d 247 (Fed.Cir.1985) prevails.

While 28 U.S.C. § 2412(d)(2)(F) (1991) states that "'court' includes the United States Claims Court," it is not meant to be an exclusion of all other Article I courts not specifically enumerated. The amendment to include the United States Claims Court within the purview of the EAJA was enacted before the creation of the United States Court of Veterans Appeals. Pub.L. 99–80, § 2, 99 Stat. 185 (1985). The United States Court of Veterans Appeals was established by an act of Congress "under Article I of the Constitution of the United States". Veterans Judicial Review Act of 1988 (VJRA), Pub.L. 100–687, Title III, Sec. 301, 102 Stat. 4113 (codified as amended at 38 U.S.C. § 7251 (formerly § 4051)). "The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252 (formerly § 4052). Under this authority, this Court has exclusive jurisdiction over such actions appealed from the Board of Veterans' Appeals to fulfill the jurisdictional requirement of 28 U.S.C. § 2412(a) (1991). While the majority relies on the authority of 28 U.S.C. § 451 (1991), which does not specifically enumerate the United States Court of Veterans Appeals as a "court of the United States," it is noteworthy that this statute has not been amended since 1982, prior to the enactment of the Veterans' Judicial Review Act of 1988. The United States Supreme Court has held since 1828 that the judicial power of the United States is not limited to the judicial power as defined under Article III of the United States Constitution and may be exercised by legislative courts. *American Ins. Co. v. Canter*, 1 Pet. 511, 546, 7 L.Ed. 242 (1828). The Supreme Court has recently held that an Article I court, which exercises judicial power, can be a "Court of Law," within the meaning of the Appointments Clause of the United States Constitution. *Freytag v. C.I.R.*, —— U.S. ——,

111 S.Ct. 2631, 2644–45, 115 L.Ed.2d 764 (1991). In that light, the United States Court of Veterans Appeals, being an Article I court, can be a "court of the United States" within the meaning of 28 U.S.C. §§ 451 and 2412. Thus, the EAJA is applicable to this Court, and *Essex* binds us to the law of the Federal Circuit.