FRIEDMAN, Circuit Judge.
This is an appeal by the United States from a judgment of the United States Claims Court * that, under the Equal Access to Justice Act, 28 U.S.C. § 2412 (Supp. V 1981) (the Act), the appellee is entitled to attorney’s fees for his successful challenge in the Court of Claims of his dismissal from civilian employment by the United States Army. Insofar as here pertinent, the Act entitles a litigant who prevails in a civil action against the United States to attor *1368 ney’s fees unless the court finds that “the position of the United States was substantially justified.” 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981). The Claims Court ruled that the position of the United States here was not substantially justified. We reverse that determination, and therefore hold that the appellee is not entitled to attorney’s fees.
I.
A. In May 1974, the appellee Gava was a civilian employee of the Army in Korea, serving as a division chief at a supply depot. Gava had become a civilian employee of the Army in Korea in 1965, following service as a Warrant Officer. He served until January 1971 in a noncompetitive status. In that month, as a condition of receiving a position in the competitive service, Gava signed a written agreement with the Army that he understood “that this overseas asr signment is limited to a maximum of one year” and that he was “expected to return to the United States at the end of the one year period.”
In November 1973, almost three years after Gava had signed the agreement, he was offered an assignment in Texas. The offer ultimately was withdrawn after Gava hospitalized himself for a knee condition that initially was believed to require surgery, but that turned out not to need that treatment.
On May 24, 1974, the depot commander sent a written recommendation to the Army’s Civilian Personnel Officer that Gava be removed from his position for unauthorized. use of government property, namely, its diversion to a Korean orphanage. Gava received a copy of this memorandum.
Approximately a week later, Gava received an offer of another assignment in the United States (in Michigan) to do the same work and at the same grade as in Korea. The offer stated that if he declined it, he was “subject to separation from Federal Service.” Gava declined the offer “[f]or the following reason: Due to the adverse action and defamation of character previously filed against the undersigned ... I will not accept employment outside of Korea until this matter is resolved to my satisfaction.”
Three days later the Army gave Gava a proposed written notice to terminate his employment “for failure to accept a valid assignment in the United States in accordance with your employment agreement .... ” In a written reply to the notice, Gava contended: (1) that the 1971 employment agreement was “null and void”; (2) that he was not obligated to accept the tendered position because (a) he had not received the benefits of the career status that had been promised him when he signed the employment agreement and (b) it had not been shown that the new position was in the competitive service or that his reassignment was in accordance with established personnel rotation policy or would serve the best interests of the Army; and (3) that in February 1972, he had submitted a grievance that was unresolved and that he was the subject of a recommendation for disciplinary action, and that “I need to remain in Korea both to press my grievance and to defend myself against alleged misconduct . ... ”
In its decision on the merits in this case, the Court of Claims determined that “[ujnbeknownst to plaintiff until nearly three months later, the May 24th request for disciplinary action had been terminated and withdrawn contemporaneously with the issuance of the notice of proposed separation.” August Gava, Jr. v. United States, No. 317-78 (Ct.Cl. Oct. 24, 1980) (order granting summary judgment).
After considering Gava’s answer, the Army decided to terminate his employment. That action was stayed pending Gava’s appeal to the Army’s Civilian Employee Appellate Review Office. After a hearing, the Review Office sustained the removal. In February 1975, the Army terminated Gava’s employment.
After another hearing, the Federal Employee Appeals Authority of the Civil Service Commission ruled that the reassign *1369 ment was valid, and that Gava’s refusal to accept it warranted the Army’s action in removing him. On November 11, 1975, the Civil Service Commission Appeal Review Board upheld this determination, and on March 11, 1976, the Board rejected Gava’s request to reopen the case.
B. Gava filed suit in the Court of Claims on July 12, 1978, challenging his discharge and seeking backpay and reinstatement. Both parties moved for summary judgment. In his motion for summary judgment, Gava contended:
(1) The Army’s dismissal of him was arbitrary and capricious because the pending disciplinary proceeding, which he believed was still pending and required his presence in Korea, justified his refusal of the transfer.
(2) The Army had not shown that Gava’s dismissal was for the good of the Service.
(3) The 1971 employment agreement was null and void, and under Army regulations, Gava was not required to accept reassignment.
(4) Laches did not bar Gava’s suit as the government contended.
The government, in turn, filed a brief contesting these contentions. The government argued that: (1) Gava’s 28-month delay between the decision of the Appeal Review Board and the filing of his case barred his suit under the doctrine of laches; (2) in view of the broad discretion of the government to reassign personnel and Gava’s general familiarity with personnel practices, the government was justified in discharging Gava because of his refusal to accept the reassignment; (3) the 1971 employment agreement was valid in 1974; and (4) both this agreement and the Army’s regulations justified Gava’s reassignment.
On October 24, 1980, the Court of Claims granted Gava’s motion for summary judgment and denied the government’s motion. The court decided only two issues. It rejected the government’s contention that laches barred Gava’s claim. On the merits, it held that “the totality of the circumstances in this case demonstrates beyond any doubt that plaintiff’s dismissal was arbitrary and capricious.”
The court recognized that federal agencies have “broad latitude to make reassignments of their personnel.” It concluded, however, that the Army’s dismissal of Gava was arbitrary and capricious. The court stated that the Army knew “that the disciplinary action formed the very basis for plaintiff’s decision to decline the reassignment” and that the record showed that Gava had “a legitimate, real and express concern about the difficulties he would encounter in defending an adverse action many thousands of miles from its place of occurrence.” It ruled that in these circumstances, the Army’s failure either to inform Gava that the proposed disciplinary charges had been withdrawn or to counsel him about alternatives to immediate reassignment invalidated his discharge for refusal to accept the transfer.
After considerable time, the parties agreed upon the amount of backpay to which Gava was entitled. On September 23, 1981, the parties filed with the court a stipulation for entry of judgment for Gava of approximately $113,614. The Court of Claims entered judgment in accordance with' the stipulation on October 2, 1981, the day after the Equal Access to Justice Act became effective.
C. Following the entry of judgment, Gava filed an application under the Act for attorney’s fees and expenses of $11,680.47, which the United States opposed on several grounds. The trial judge ruled that Gava was entitled to attorney’s fees and expenses, but set for hearing the determination of the amount of the award.
With respect to the issue we deem determinative — whether the position of the United States was substantially justified — the trial judge stated that “[t]he facts of this case, as set out in the court’s order granting summary judgment in plaintiff’s favor, provide ample evidence that the government’s action was not substantially justified.” The judge quoted with approval the statement in Photo Data, Inc. v. Sawyer, 533 F.Supp. 348, 352 (D.D.C.1982), that “the Court must *1370 scrutinize not only the government’s theory in defending the legal issues raised but also the occurrences that impelled plaintiff to bring this action.” The judge discussed the facts leading to Gava’s dismissal, quoted extensively from the prior decision in this case, and concluded:
Defendant’s argument that the government’s action was substantially justified because the government had the right to reassign plaintiff to another location, and that plaintiff had no right to refuse, except on pain of termination, is a mere reiteration of its prior position on the merits, without any recognition of the other circumstances which convinced the court, without need for a trial, that defendant’s conduct was arbitrary and capricious.
II.
A. As noted, a successful litigant against the United States may not recover attorney’s fees under the Act if “the position of the United States was substantially justified.” In Broad Avenue Laundry and Tailoring v. United States, 693 F.2d 1387 (Fed.Cir.1982), we recently examined the standards for determining that issue. We held that the “position of the United States” to be evaluated is the position taken “in the ‘civil action’ in which the attorney’s fees were ‘incurred.’ ” Broad Avenue, supra, at 1390.
We further held that the test for determining whether the position of the United States was “substantially justified” was one of reasonableness, and that reasonableness “depends upon all of the pertinent facts of the case.” Id. at 1391. We pointed out that although “[f]ixed rules cannot be established for determining the issue,” two guidelines could be stated: (1) “[T]he mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified;” and (2) “the position of the United States is not shown to have been substantially justified merely because the government prevailed before the tribunal below and endeavored to uphold the decision in its favor.” Id. at 1392.
The government apparently contends that the correct standard for determining substantial justification is not reasonableness, but whether its conduct was “reprehensible.” It refers to two decisions of the Court of Claims which indicated that attorney’s fees could be awarded if the government’s conduct in litigating the case was so characterized. Estate of Berg, 687 F.2d 377 (Ct.Cl.1982); In re Papson, No. 602-80T (Ct.Cl. order, June 18, 1982). Those statements may relate to another provision of the Act (28 U.S.C. § 2412(b) (Supp. V 1981), making the United States liable for attorney’s fees when a private party would be liable “under the common law,” i.e., when it acted in bad faith. See H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8-9, and H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 25, reprinted in 1980 U.S.Code Cong. & Ad.News 4986-87, 5014. In any event, Broad Avenue announced the rule that the standard of substantial justification is reasonableness, and that is the standard we apply.
B. We cannot agree with the trial judge that the government’s position in litigating this case before the Court of Claims was not substantially justified.
As the Court of Claims recognized in its prior decision, the government has broad discretion to reassign its employees to different locations, and to discharge them for refusal to accept a new assignment. See, e.g., Leefer v. United States, 215 Ct.Cl. 1061 (1978). The government’s arguments supporting the applicability of this principle to Gava’s case, were cogent. The government pointed out that no disciplinary proceeding actually had been instituted against Gava (it only had been recommended), that Gava asserted other reasons besides the pending possible removal proceedings as justification for his refusal to accept the reassignment, and that there was no need to counsel Gava about the alternatives to refusing the reassignment because “the record demonstrates that the plaintiff was well aware of his alternatives as a result of and as shown by events surrounding a previous avoidance of an offer to rotate.”
*1371 Although the Court of Claims rejected the government’s position on this issue and characterized the Army’s discharge of Gava for refusing to accept the reassignment as arbitrary and capricious, the government had a reasonable basis for litigating the issue before the Court of Claims. Here, as in Broad Avenue, “it was far from clear that the [Army’s] decision was erroneous or that the Court of Claims would reverse it.” At 1392. Indeed, on the first page of his brief in support of his motion for summary judgment, Gava twice described the question whether the government could reassign him in these circumstances as “one of first impression.”
The government also had a reasonable basis for litigating the other issues in the case. The government cited several cases in which delays of less than the 28 months here were held to constitute laches. Although the court rejected the laches argument, that fact does not establish that the government’s position on the issue was not substantially justified. Broad Avenue, supra. Furthermore, the government was justified in arguing that under the 1971 employment agreement Gava was required to accept reassignment to the United States in 1974, and that such reassignment violated neither the agreement nor Army regulations.
C. The precise rationale for the trial judge’s ruling that the government’s position was not substantially justified is unclear. The trial judge’s reliance on the statement in Photo Data, supra, coupled with his discussion of the facts surrounding Gava’s dismissal and his quotation of the lengthy passage from the prior Court of Claims decision criticizing the discharge, suggests that he may have given significant, or possibly controlling, weight to the view that because the discharge was improper, the government was not justified in defending it.
Our subsequent decision in Broad Avenue, however, pointed out that although “[t]he justification for the government’s litigating position necessarily implicates the decision of the tribunal being reviewed ... the court is not to re-examine the administrative proceedings in an attempt to determine whether the party seeking the attorney’s fees should have prevailed before that tribunal.” In determining an application for attorney’s fees under the Act, the in.quiry is directed to the justification for the government’s litigating position before the court, not the justification for the government’s administrative action that prompted the suit.
The fact that the government lost its case in the Court of Claims does not establish that the government’s litigating position before the court was not substantially justified. Broad Avenue, supra. This is so even where, as here, the court’s decision was highly critical of the government’s action that the suit challenged.
The judgment of the United States Claims Court that the appellee is entitled to attorney’s fees and expenses is reversed.
REVERSED.

 Pursuant to an order of this court dated October 2, 1982, Judge Miller, on October 8, 1982, entered a final judgment in accordance with his recommended decision of July 20, 1982. We treat the government’s exceptions to the decision as an appeal from the Claims Court’s final judgment.