**LABORATORY SUPPLY CORPORATION OF AMERICA**

v.

**The UNITED STATES.**

**No. 682–83C.**

United States Claims Court.

April 3, 1984.

Thomas C. Wheeler, Washington, D.C., for plaintiff. Barbara G. Werther and Pettit & Martin, Washington, D.C., of counsel.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. David M. Cohen, Director, Washington, D.C.

## OPINION

PHILIP R. MILLER, Judge:

On January 10, 1984, plaintiff filed a motion for recovery of $10,277.75 in attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982) ("EAJA") after the entry of judgment in this case declaring plaintiff the low bidder on a contract for the supply of food packaging material to the Naval Supply Center at Pearl Harbor, Hawaii (the Navy), and enjoining the United States from awarding the contract to any bidder other than the plaintiff.

Under the EAJA a "prevailing party other than the United States" shall be awarded:

> fees and other expenses * * * incurred by that party in any civil action * * * brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(28 U.S.C. § 2412(d)(1)(A).)

It is determined herein that the court has jurisdiction of the claim but that plaintiff's application for attorneys' fees is denied because: (1) the position taken by the United States in the litigation was reasonable; and (2) special circumstances here would make an award to the plaintiff unjust.

### The Facts

The controversy that gave rise to plaintiff's injunction action is more fully described in *Laboratory Supply Corp. of Ameri-ca v. United States*, 4 Cl.Ct. 136, *rev'g on reconsideration*, 3 Cl.Ct. 722 (1983).

The dispute grew out of a bid submitted by the plaintiff in response to a formal solicitation issued by defendant on or about October 5, 1983, for four sizes of food packaging trays and two sizes of plastic packaging film, both of which were referred to by brand names. The food trays specified in the solicitation were those manufactured by Mobil Chemical Corporation and the plastic wrap was that manufactured by Borden Chemical Corporation. However, the solicitation also provided that the contractor could supply products which were equal to the brand named ones, and the solicitation form provided a section for the bidders to indicate the names and locations of the manufacturers, and the brand names and the numbers of such items.

The bids were opened on November 3, 1983, and plaintiff was the low bidder on both classes of items; however, the contracting officer determined that Laboratory Supply's bid was nonresponsive, and rejected it because at the place in the bid form where information was sought as to the manufacturers, plaintiff had inserted merely the phrase "All Items Borden Chemical as Specified." The contracting officer concluded from this that the bid was nonresponsive because plaintiff was offering to supply Borden products for "all items" sought in the solicitation, but plaintiff had failed to furnish the information necessary for the contracting officer to determine if the "Borden" trays were equal to the "Mobil" trays specified in the solicitation. Since the bid had been submitted on an all or none basis, he rejected it entirely.

On November 4, 1983, plaintiff informed the Navy by letter that due to a clerical omission it had failed to properly complete the bid and had, in fact, intended to supply Borden plastic film and Mobil trays as specified. However, the Navy refused to accept the modification after the bids had been opened.

On November 14, 1983, plaintiff filed a complaint seeking a declaratory judgment that it was the low responsible bidder on

the solicitation, and injunctive relief restraining the Navy from awarding the contract under the solicitation to anyone other than Laboratory Supply. On November 15, 1983, the court denied plaintiff's request for a temporary restraining order and ordered that the complaint be dismissed because the bid had properly been rejected as nonresponsive to the solicitation. The court stated (*Laboratory Supply Corp. v. United States*, 3 Cl.Ct. 722 at 726 (1983)):

> It may be that plaintiff always intended to supply the Mobil product, but nothing in the information submitted to the government at or prior to the bid opening gave the Navy that information, and, thus, there is no basis for the inference that the writing did not properly reflect the understanding of the Navy. The proper conclusion is that there was no contract and hence nothing to be reformed, since there was no meeting of the minds as to what was to be delivered and no acceptance.

On November 21, 1983, plaintiff filed motions to substitute a new attorney of record and for reconsideration of the order denying its request for injunctive relief. Reconsideration was requested on the ground that plaintiff had previously failed to bring to the attention of the court and the defendant a pertinent clause in the solicitation which provided:

L9 BRAND NAME OR EQUAL

\* \* \* \* \* \*

(b) Unless the bidder clearly indicates in his bid that he is offering an "equal" product, his bid shall be considered as offering a brand name product referenced in the invitation for bids.

At a hearing held the same day the motions were filed, the court granted both motions, while defendant agreed to defer award of the contract for 30 days. The court allowed plaintiff until November 29, 1983, to file its motion for summary judgment and brief in support of it, defendant until December 5, 1983, to file its opposition, and plaintiff until December 7, 1983, to file a reply. The case was then argued orally on Friday, December 9, 1983, and the court issued its order granting the injunction on Tuesday, December 13, 1983.

The court granted plaintiff the relief that it sought based on the conclusion that under Clause L9 of the solicitation the effect of plaintiff's ambiguity in failing to make clear the name of the manufacturer and to furnish the descriptive information as to the product it intended to supply was not to make the bid nonresponsive but to make it an unqualified bid to supply the specified brand name products. Therefore, the court held, the Navy acted arbitrarily and capriciously in rejecting plaintiff's bid. *Laboratory Supply Corp. of America v. United States*, 4 Cl.Ct. 136 (1983).

## Discussion

### 1. Jurisdiction.

Defendant contends that the Claims Court has no jurisdiction to award attorneys' fees under the EAJA because only a "court of the United States" as defined by 28 U.S.C. § 451 (1982) is authorized to award attorneys' fees under § 2412, and because the Claims Court is not a court as so defined, i.e., one of which the judges "are entitled to hold office during good behavior." (The judges of the Claims Court serve only for 15-year terms. 28 U.S.C. § 172(a) (1982).)

While there is some evidence in the legislative committee reports of intent to correlate §§ 2412 and 451, there is stronger evidence of legislative intent to the contrary. Section 2412 does not anywhere use the term "court of the United States." It provides for awards of costs and fees "in any court having jurisdiction" of the action. (28 U.S.C. § 2412(a), (b) and (d)(1)(A).) Equally important is that it provides at three places that the judgments for costs and fees shall be paid as provided in section 2517 of title 28 U.S.C. (§ 2412(c)(1), (c)(2) and (d)(4)(A).) Section 2517 provides for the manner and source of payment of Claims Court judgments. Moreover, although the Court of Appeals for the Federal Circuit has not yet had occasion to come to grips with this jurisdictional question

(see *Morris Mechanical Enterprises v. United States*, 728 F.2d 497 (Fed.Cir.1984) and *Ellis v. United States*, 711 F.2d 1571, 1574 n. 3 (Fed.Cir.1983)), this court has consistently held that it does have jurisdiction to make costs and attorneys' fee awards under the EAJA. *Bailey v. United States*, 1 Cl.Ct. 69, 70–74, *vacated in part on other grounds*, 721 F.2d 357 (Fed.Cir. 1983); *AABCO, Inc. v. United States*, 3 Cl.Ct. 700, 703 (1983); *Clark v. United States*, 3 Cl.Ct. 194, 196 (1983); *Essex Electro Engineers, Inc. v. United States*, 4 Cl.Ct. 463 at 465 (1984); *Bregstone v. United States*, 4 Cl.Ct. 507 at 511–12 (1984); and *St. Paul Fire & Marine Insurance Co. v. United States*, 4 Cl.Ct. 762 at 765–66 (1984). Accordingly, defendant's argument that this court lacks jurisdiction to make the fee awards is rejected.[1]

### 2. The Merits

■ The EAJA directs the court to award attorneys' fees to a party prevailing against the United States, unless the position of the United States was substantially justified or special circumstances make an award unjust. The substantial justification requirement mandates an inquiry into the reasonableness of the position taken by the government in the litigation considering all the facts and circumstances. *Ellis v. United States*, 711 F.2d 1571, 1575–76 (Fed.Cir. 1983); *Gava v. United States*, 699 F.2d 1367, 1370 (Fed.Cir.1983).

"In determining an application for attorney's fees under the Act, the inquiry is directed to the justification for the government's litigating position before the court, not the justification for the government's administrative action that prompted the suit." *Gava v. United States*, 699 F.2d at 1371; and *see also Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1390–91 (Fed.Cir.1982). This distinction is critical in this case because, under the Federal Circuit's approach, the fact that the court found that the Navy's decision not to award the contract to the plaintiff was arbitrary and capricious does not necessarily require a finding that the decision by the government to defend itself in this court was not substantially justified.

The burden of proving that the position the government maintained in the litigation was substantially justified is on the government. Defendant is required to show that its position had a reasonable basis in both fact and law to avoid payment of the prevailing parties attorneys' fees. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4953, 4984, 4989. However, "[t]he mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified." *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d at 1391. This is true, even where the government conduct that was challenged has been found to be "arbitrary and capricious." *Gava v. United States*, 699 F.2d at 1369.

■ After considering all the facts and circumstances, this court concludes that the government has sustained its burden of showing that there was substantial justification for the government's defense of this case.

1. Plaintiff concedes that defendant was justified in defending the suit initially, prior to the filing of plaintiff's motion for reconsideration. Plaintiff did not at that time bring contract Clause L9 to the attention of either defendant or the court. Without that clause, the case was a simple one in which plaintiff had failed to submit a responsive bid indicating whether it proposed to furnish the brand name product or one it deemed equal; and, if it was the latter, it had failed to submit the information requested as to the name of the manu-

---

1. In *Bowen v. Commissioner*, 706 F.2d 1087 (11th Cir.1983), the Court of Appeals for the Eleventh Circuit held that the Tax Court does not have jurisdiction to make an award for attorneys' fees under the EAJA because it is not a court of the United States under 28 U.S.C. § 451. However, it bolstered that reasoning with evidence of legislative intent having specific reference to the Tax Court, and it had no occasion at all to discuss the Claims Court nor the specific references to payment pursuant to § 2517.

facturer and the identification of the product, which the contracting officer needed to determine whether or not it was in fact equal to the one specified.

2. Having already prevailed, defendant was justified in defending against the motion for reconsideration. Since the motion was not based on new facts not previously available to plaintiff but on a contract clause and argument previously overlooked by plaintiff's counsel, plaintiff had no unqualified right to reconsideration of a case once decided.

3. Even after the court granted the motion for reconsideration, it was reasonable for defendant to defend the case despite Clause L9. That clause provided that unless the bidder clearly indicated that he was offering an equal product his bid should be considered as offering the brand name product, but it was susceptible of meaning that although the government had the *right* to treat the bid as offering the brand name product it was not compelled to do so and could still reject the ambiguous bid. For, otherwise, it could mean that even if the contractor was at fault in creating the ambiguity, the government could in effect be required to buy a lawsuit.

4. There were no court decisions interpreting Clause L9, and since plaintiff, by its admitted negligence had cause the ambiguity which necessitated ascertaining the proper interpretation of the clause, it was not unreasonable to subject plaintiff to part of the cost of obtaining such a court decision.

In the circumstances of this case an award would also be unjust. A committee report on the EAJA illuminates the Congressional intent behind the exclusion of the award of fees where "special circumstances make an award unjust." (28 U.S.C. § 2412(d)(1)(A).) It states:

> Furthermore, the Government should not be held liable where "special circumstances would make an award unjust." This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. *It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.* [Emphasis added.]

H.R.Rep. No. 1418, 96th Cong.2d Sess. 11, *reprinted in*, 1980 U.S.Code Cong. & Ad. News 4953, 4990.

It must be kept in mind that the instant case was not a suit for damages, but a suit to enjoin the Navy from purchasing needed supplies from anyone other than plaintiff. It was essential that the case be decided rapidly. After allowance of its motion for reconsideration, pursuant to court order, plaintiff filed its motion for summary judgment on November 29 and defendant's attorney filed its brief in opposition on December 5, 1983, only 6 calendar days or 4 working days later. In view of the fact that defendant's attorney was in Washington, D.C., and his "client" in Honolulu, Hawaii, 5,000 miles and five time zones from Washington, D.C., 4 working days was hardly a copious amount of time within which to consult with his client as to the facts, research the law, prepare a brief in opposition, and at the same time undertake to comply with the bureaucratic requirements necessary to persuade his superiors at the Department of Justice and the Navy officers in Honolulu that they should accept plaintiff's bid and reject the others when they had once determined to the contrary and had already been sustained by the court.

In *AABCO, Inc. v. United States,* 3 Cl.Ct. 700 (1983), this court denied an EAJA application for attorneys' fees to a plaintiff which, as here, had successfully obtained a declaratory judgment and an injunction in a preaward suit. The court reasoned that the fast-track of the litigation was a factor that supported a finding that the government's position was substantially justified. Judge Yock stated in his opinion (3 Cl.Ct. at 704):

> there is a great deal of truth in the defendant's position that contract declaratory judgment/injunctive cases are by definition fast-paced cases that virtually

force the Government into litigation before its litigation counsel know the full story. The plaintiff may have been living with its procurement problem for some time as the Government agency involved made up its mind as to who it should contract with. On the other hand, the Department of Justice litigation attorney is notified of the suit at one moment and often has to respond to the Court's call for a hearing the next. There is simply very little time for discovery, reflection or full understanding of the case. * * * The courts have consistently looked to time factors to determine whether or not a litigating position was substantially justified. *See Greenberg v. United States,* [1 Ct.Cl. 406, 408 (1983)]; *Clark v. United States,* [3 Cl.Ct. 194, 197 (1983)]; *Hill v. United States,* [3 Cl.Ct. 428, 430 (1983)]; *Gould v. United States,* [3 Cl.Ct. 693, 696 (1983)]; *see also Ellis v. United States,* [711 F.2d 1571, 1576 (Fed.Cir.1983)].

In *Essex Electro Engineers, Inc. v. United States,* 4 Cl.Ct. 463 at 468–69 (1984), likewise, the court found that the dispatch with which the government was compelled to act in a preaward injunction case was a special circumstance which made an award of attorneys' fees unjust. Judge Nettesheim stated for the court:

This court's bid protest jurisdiction forces the Department of Justice (if the agency is represented by it) to come into court on short notice to defend an agency's procurement decision, despite lack of acquaintance with the matter. * * * The usual process of case investigation by the attorney charged with defending the Government, which frequently leads to interposition of the Department's view that the agency action cannot be defended in court, rarely can be available if the case is briefed, argued, and finally decided within 16 days. One of the purposes of the EAJA is to deter the United States' iterating an agency position through the courts when it has not made an independent assessment of the reasonableness and legitimate defensibility of the agency's position. * * * That interest is not served by shifting litigation costs to the Government in a fact-intensive case, such as this one, when the Government attorney does not have a reasonable opportunity to make an assessment of reasonableness and to influence the Department's decision whether to litigate.

In the normal course of litigation, a party against whom an injunction issues either has counsel knowledgeable on the subject matter of the litigation and aware of the pending emergency request or counsel who, although not familiar with the instant matter, has an on-going familiarity with the client's affairs. This is not the case when a federal agency is required to turn to the Justice Department for the defense of an injunction suit, and no useful purpose consistent with the EAJA would be served by treating the Government more harshly than a private party which does not operate under a similar disability, when, as here, no clear-cut violation of statute or regulation is involved. [Citations omitted.]

This reasoning is equally applicable to the facts herein.

Finally, it would be unjust to charge the government with plaintiff's legal expenses, when the plaintiff's own negligence was the cause of the confusion that led to the need for the filing of the case and the attorneys' time and effort involved therein. If plaintiff had properly completed the bid form, the contracting officer would have had no reason to have rejected it as nonresponsive. Plaintiff admitted in its complaint that its failure to complete the form was due to its own clerical mistake. In addition, the case would have been disposed of more promptly had plaintiff provided the court with a complete and correct copy of its bid with the initial complaint and at that time made its argument about Clause L9.

Accordingly, plaintiff's motion to recover attorneys' fees is denied.