# Responsibility of Agencies to Pay Attorney's Fee Awards Under the Equal Access to Justice Act

The judgment of attorney's fees and expenses entered against the United States in *Cienega Gardens v. United States* cannot be paid out of the Judgment Fund because the Equal Access to Justice Act provides for payment.

Pursuant to EAJA, the Department of Housing and Urban Development must pay the award. HUD would be the "agency over which the [plaintiffs] prevail[ed]" under EAJA because it administered the federal program that was the subject of the litigation.

October 16, 2007

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

You have asked for our opinion on which agency, if any, must pay the judgment of attorney's fees and expenses entered against the United States in *Cienega Gardens v. United States*, No. 02-5050 (Fed. Cir. Mar. 5, 2004). In particular, you have asked whether the award may be paid out of the Judgment Fund, under 31 U.S.C. § 1304 (2000), or whether it must be paid out of the appropriations of an agency responsible for the award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000).

On December 9, 2005, we advised that the award could not be paid out of the Judgment Fund, because the Judgment Fund is available only when "payment is not otherwise provided for." 31 U.S.C. § 1304(a)(1). EAJA provides for payment, by directing that a fee award "be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise." 28 U.S.C. § 2412(d)(4). We further advised that the Department of Housing and Urban Development ("HUD") would be the "agency over which the [plaintiffs] prevail[ed]" under EAJA, because HUD administered the federal program that was the subject of the litigation. This opinion confirms our previous advice and provides additional analysis of these questions.

## I.

The Federal Circuit imposed the fee award in *Cienega Gardens* at the close of a protracted lawsuit challenging amendments to a HUD program designed to subsidize low- and moderate-income multifamily housing. After almost a decade of litigation and three rounds of appeals, the United States Court of Appeals for the Federal Circuit ruled that the amendments constituted a regulatory taking of the plaintiffs' property and ordered the United States to pay just compensation. The court of appeals further ordered that the United States pay the plaintiffs the attorney's fees and expenses incurred during their third appeal, the stage of the litigation during which the plaintiffs prevailed on their takings claims. Before

considering which instrumentality of the federal government must pay this fee award, we discuss the relevant events in the *Cienega Gardens* litigation.

## A.

The plaintiffs in *Cienega Gardens* were the owners of housing constructed in the 1970s under the National Housing Act, Pub. L. No. 73-479, 48 Stat. 1246 (1934) (codified as amended at 12 U.S.C. §§ 1701–1750g (2000 & Supp. V. 2005)), and financed with HUD-insured low-interest mortgages. As a condition of receiving the HUD-insured mortgages, the plaintiffs incorporated into their mortgage contracts with private lenders a variety of restrictions on the properties, including restrictions on income levels of tenants, allowable rental rates, and the rate of return on initial equity that the owners could receive. By their terms, these restrictions remained in effect for the duration of the mortgage contracts. Under HUD regulations then in effect, developers retained the right to prepay their loans and satisfy their mortgage obligations after twenty years. 24 C.F.R. §§ 221.524(a), 236.30(a) (1970). Owners who prepaid the mortgages would be released from the regulatory restrictions.

As the twenty-year mark for many HUD-insured mortgages approached, Congress became concerned that large numbers of owners would exercise their prepayment rights and remove their properties from the low-income housing pool. Congress found that such an event "would precipitate a grave national crisis in the supply of low income housing that was neither anticipated nor intended when contracts for these units were entered into." Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, tit. II, § 202(a)(4), 101 Stat. 1877, 1877 (1988) ("ELIHPA"); *see also* S. Rep. No. 101-316, at 105 (1990).

Congress chose to forestall such an outcome by enacting ELIHPA, which blocked the owners from exercising their prepayment rights without first obtaining HUD approval. In order to obtain that approval, the owners were required to submit a "plan of action" informing HUD of how the developers would use the property following prepayment. ELIHPA § 223, 101 Stat. at 1879. HUD could only approve prepayment upon finding that the plan would "not materially increase economic hardship for current tenants or involuntarily displace current tenants (except for good cause) where comparable and affordable housing is not readily available." *Id.* § 225(a)(1), 101 Stat. at 1880. In 1988, HUD issued an interim rule implementing these prepayment restrictions, 53 Fed. Reg. 11,224 (Apr. 5, 1988) (codified at 24 C.F.R. pt. 248 (1989)), and issued instructions to its field offices detailing the procedures for filing and reviewing plans of action. In 1990, HUD issued a final rule implementing the prepayment restrictions imposed under the interim rule. 55 Fed. Reg. 38,944 (Sept. 21, 1990) (codified at 24 C.F.R. pt. 248 (1991)).

The ELIHPA restrictions would have expired after two years, but Congress extended them before their expiration, Pub. L. No. 101-494, 104 Stat. 1185 (1990),

and then made them permanent under the Low-Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, tit. VI, 104 Stat. 4249 ("LIHPRHA"). HUD continued to issue regulations implementing ELIHPA and LIHPRHA.[1] The plaintiffs were effectively prohibited from prepaying their mortgages until Congress enacted the Housing Opportunity Program Extension Act of 1996, which permitted owners to exercise their prepayment rights and be free from the affordability restrictions if they agreed not to increase their rents until sixty days after prepayment. *See* Pub. L. No. 104-120, § 2(b), 110 Stat. 834, 834.

## B.

In 1994, the *Cienega Gardens* plaintiffs brought suit in the Court of Federal Claims challenging their inability to prepay the HUD-insured mortgages under ELIHPA and LIHPRHA. *Cienega Gardens v. United States*, 33 Fed. Cl. 196 (1995). Throughout the litigation, the United States was represented by attorneys from the Civil Division of the Department of Justice ("DOJ"), with attorneys from HUD appearing on the briefs as "of counsel." We understand that the Civil Division and HUD had no significant disagreement over the positions asserted during the course of the litigation.

Pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), the plaintiffs named the United States as the only defendant. Plaintiffs' complaint charged that the government had violated several duties allegedly owed to the plaintiffs by implementing the prepayment restrictions that Congress had imposed through ELIHPA and LIHPRHA. First, plaintiffs claimed that the government had breached express contracts with the plaintiffs in the form of the regulatory agreements that incorporated the prepayment right. Second, plaintiffs claimed that the government had violated certain statutory directives in the manner in which it had administered the programs under sections 221(d)(3) and 236 of the National Housing Act. Finally, plaintiffs claimed that the government had taken their

---

[1] *See* Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing, 56 Fed. Reg. 20,262 (May 2, 1991) (proposed rule); Guidelines for Determining Appraisals of Preservation Value Under the Low-Income Housing Preservation and Resident Homeownership Act of 1990, 56 Fed. Reg. 64,932 (Dec. 12, 1991) (notice and request for public comment); Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing, 57 Fed. Reg. 11,992 (Apr. 8, 1992) (interim rule); Preservation of Multifamily Assisted Rental Housing: Interim Guidelines for the Section 222(e) Windfall Profits Test, 57 Fed. Reg. 12,064 (Apr. 8, 1992) (notice of interim guidelines and request for public comment); Final Guidelines for Determining Appraisals of Preservation Value Under the Low-Income Housing Preservation and Resident Homeownership Act of 1990, 57 Fed. Reg. 19,970 (May 8, 1992) (notice); Delegation of Authority for the Emergency Low Income Housing Preservation Act of 1987, as Amended by the Low Income Housing Preservation and Resident Homeownership Act of 1990, and as Further Amended by the Housing and Community Development Act of 1992, 58 Fed. Reg. 63,384 (Dec. 1, 1993) (notice of delegation of authority).

property without just compensation, in violation of the Fifth Amendment, by denying them the right to put their property to a more profitable use after twenty years.

In the initial round of litigation, the Court of Federal Claims granted summary judgment in the plaintiffs' favor on the contract claim, held that plaintiffs could maintain a claim for a regulatory taking, and ruled in the government's favor on all other claims. *Cienega Gardens v. United States*, 33 Fed. Cl. 196 (1995). The court then held a trial to determine contract damages for four model plaintiffs. *Cienega Gardens v. United States*, 38 Fed. Cl. 64 (1997). On appeal, the Federal Circuit upheld the rulings in the government's favor but reversed on the contract claim, holding that HUD was not in privity with plaintiffs under the regulatory agreements. *Cienega Gardens v. United States*, 194 F.3d 1231 (Fed. Cir. 1998).

The case returned to the Court of Federal Claims to address plaintiffs' remaining claim for a regulatory taking. The trial court dismissed that claim on the ground that plaintiffs had failed to exhaust their administrative remedies by not filing a plan of action with HUD seeking a release from the affordability restrictions. The Federal Circuit reversed on appeal, however, holding that the plaintiffs had "set forth uncontested facts demonstrating that it would be futile for them to file prepayment requests with HUD." *Cienega Gardens v. United States*, 265 F.3d 1237, 1248 (Fed. Cir. 2001).

Following another remand, the trial court rejected the regulatory taking claim on the merits. The plaintiffs filed a third appeal, and the Federal Circuit again reversed, ruling that the four model plaintiffs had suffered a regulatory taking and that the other plaintiffs should be given the opportunity to prove the facts underlying their claims before the trial court. *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003).[2]

## C.

Following their success on the third appeal, the plaintiffs moved for an award of attorney's fees and expenses from the United States under EAJA, 28 U.S.C. § 2412(d). In relevant part, section 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States . . . , unless the court

---

[2] The *Cienega Gardens* litigation has continued, although the subsequent developments are not relevant to the issues addressed in this opinion. *See, e.g.*, *Cienega Gardens v. United States*, 503 F.3d 1266 (Fed. Cir. 2007); *Independence Park Apts. v. United States*, 449 F.3d 1235, *on reconsideration*, 465 F.3d 1308 (Fed. Cir. 2006).

> finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). In a brief order, the Federal Circuit granted the motion for fees and expenses under section 2412(d), but limited the award to those incurred during the plaintiffs' third appeal, when the court of appeals reversed the trial court's denial of the regulatory taking claim:

> The application is granted in part. The court allows reasonable attorney fees and expenses pursuant to the EAJA for *Cienega III*, in the amount of $147,373.24 as reasonable attorney fees and $9,386.16 in expenses, for a total of $156,759.40.

Order, *Cienega Gardens v. United States*, No. 02-5050, at 2 (Mar. 5, 2004). To award fees under this provision, the Federal Circuit was obliged to find that the efforts of the United States to defend the Court of Federal Claims' ruling on the regulatory takings question in the third appeal were not "substantially justified" and that no "special circumstances" made the award of fees unjust. The Federal Circuit's conclusion provided no explanation for why the United States was not justified in seeking to defend the trial court decision, and on its face, such a ruling would appear questionable. The United States did not seek further review of that decision, however.

## II.

In light of the Federal Circuit's judgment, you have asked which federal agency, if any, bears responsibility under EAJA to pay the award of attorney's fees and expenses in the *Cienega Gardens* case. EAJA provides that "[f]ees and other expenses awarded under this subsection to a party shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise." 28 U.S.C. § 2412(d)(4). In most cases, which federal agency must pay the award is not likely to be an issue. The defendant in the case will be a federal agency or an officer acting on behalf of a federal agency, and the plaintiff's suit will directly challenge the action or inaction of the government defendant. In such a case, the "agency over which the party prevails" would be clearly identified.

The circumstances of this case, however, have engendered some disagreement over which agency, or whether in fact any agency, should be responsible for the award of attorney's fees and expenses. The plaintiffs did not sue any one agency but rather brought suit against the United States. Furthermore, the primary issue in the litigation was whether two statutes enacted by Congress, ELIHPA and LIHPRHA, had effected an uncompensated taking of plaintiffs' property. You and HUD therefore have expressed the view that *Cienega Gardens* constitutes the rare case in which no agency bears responsibility for the fee award and in which

payment should be made out of the Judgment Fund, 31 U.S.C. § 1304, which Congress established to cover judgments against the United States for which no appropriation is otherwise available. *See* Letter for Debra Diener, Chief Counsel, Financial Management Service, Department of the Treasury, from Carole W. Wilson, Associate General Counsel for Litigation, Department of Housing and Urban Development, *Re: Cienega Gardens, et al. v. United States, United States Court of Appeals for the Federal Circuit, Award of Attorneys' Fees* (May 12, 2004) ("HUD Letter"), and attached Memorandum of Law (May 11, 2004) ("HUD Memo"); Memorandum for Steven Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Peter D. Keisler, Assistant Attorney General, Civil Division, *Re: Request for New Opinion Concerning Payment of Judgments under the Equal Access to Justice Act* at 10-12 (May 4, 2005) ("DOJ Letter").

The Department of the Treasury, which administers the Judgment Fund, disagrees. Treasury notes that the Judgment Fund is available only when "payment is not otherwise provided for" by federal law, 31 U.S.C. § 1304(a)(1). Letter for Stuart E. Schiffer, Deputy Assistant Attorney General, Civil Division, Department of Justice, from Margaret Marquette, Chief Counsel, Financial Management Service, Department of the Treasury, *Re: Cienega Gardens, et al. v. United States, No. 02-5050 (Fed. Cir.)* at 2 (Feb. 1, 2005). Treasury contends that EAJA does provide for payment of "fees and other expenses" by "any agency over which the party prevails" and that HUD is the responsible agency under the statute. Treasury notes that "the cause of action was based upon a statute within HUD's purview (12 U.S.C. § 4122), DOJ consulted with HUD as the client agency, and HUD attorneys were listed on the court briefs as 'of counsel.'" *Id.* Based on this understanding, Treasury has declined payment absent an opinion to the contrary from this office.

Accordingly, you have asked for this office's view as to whether the Judgment Fund is authorized to pay EAJA judgments entered against the United States, when no agency has been named as a defendant in the litigation. As both Treasury's response and your memorandum suggest, this question also requires consideration of whether Congress deemed a particular agency to be responsible under EAJA for the fee award. For the reasons discussed below, we conclude that the Judgment Fund is not available to satisfy the fee award, because HUD constitutes the "agency over which the party prevail[ed]" under EAJA.

## A.

The Judgment Fund is available "to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments" against the United States only when "payment is not otherwise provided for." 31 U.S.C. § 1304(a)(1). If Congress has made an appropriation that is reasonably interpreted to cover a liability incurred by the government, the liability must be satisfied out of that

appropriation. "The fact that it might be necessary to do some statutory interpretation to determine if a particular appropriation is available to pay a judgment or compromise settlement does not preclude use of that appropriation." *Matter of: S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Payment of Judgment*, 62 Comp. Gen. 12, 16 (1982) (rejecting HUD's argument that a settlement should be paid out of the Judgment Fund).[3]

Here, Congress did provide a statutory mechanism for the payment of EAJA awards by specifically providing that fee awards "shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise." 28 U.S.C. § 2412(d)(4). Congress, in other words, intended to ensure that, to the extent possible, fee awards should be paid by whichever agency, or agencies, may be described as having been prevailed over in an action against the United States. Congress did not intend for agencies to turn to the Judgment Fund to pay a fee award under EAJA, unless it can be said that the plaintiffs did not prevail over "any agency."

The history of EAJA confirms this interpretation. The original version of the statute provided:

> Fees and other expenses awarded under this subsection *may* be paid by any agency over which the party prevails from any funds made available to the agency, by appropriation or otherwise, for such purpose. If not paid by any agency, the fees and other expenses shall be paid in the same manner as the payment of final judgments is made in accordance with sections 2414 and 2517, of this title.

Pub. L. No. 96-481, tit. II, § 204(a), 94 Stat. 2325, 2329 (1980) (emphasis added) (codified at 28 U.S.C. § 2412(d)(4)(A) (Supp. V 1981)).[4] In 1982, this office opined that Congress had not intended to give the losing agency unfettered discretion to seek payment from the Judgment Fund, but rather "a reasonable amount from the unrestricted appropriations of an agency *must* be allocated to the payment of awards for fees and expenses" under EAJA. *Funding of Attorney Fee Awards Under the Equal Access to Justice Act*, 6 Op. O.L.C. 204, 205 (1982). We concluded that an agency could seek payment from the Judgment Fund "only when making an award out of agency funds would be a very heavy financial blow to the agency[.]" *Id.* at 211. This office therefore recognized that the previous

---

[3] Although the Executive Branch is not bound by the legal opinions of the Comptroller General, in resolving appropriation issues we consider them for what persuasive value they may have. *See, e.g.*, *Submission of Aviation Insurance Program Claims to Binding Arbitration*, 20 Op. O.L.C. 341, 343 n.3 (1996).

[4] Sections 2414 and 2517(a) of title 28 set forth the standard procedures for obtaining disbursements from the Treasury to satisfy a judgment against the United States.

version of EAJA would permit an agency to turn to the Judgment Fund for the payment of fee awards only under very narrow circumstances.

Congress eliminated even this narrow agency discretion by amending EAJA in 1985. Rather than providing that an agency "may" pay a fee award from available funds, Congress declared that the agency "shall" pay the award from agency funds. Pub. L. No. 99-80, § 2(d), 99 Stat. 183, 185 (1985). Congress also eliminated the second sentence of the former section 2412(d)(4)(A) that permitted the agency to treat a fee award like other judgments. EAJA now provides simply that "[f]ees and other expenses awarded under this subsection to a party *shall* be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise." 28 U.S.C. § 2412(d)(4) (emphasis added). These amendments confirm that Congress did not intend that the Judgment Fund be used to pay fee awards under EAJA. The Judgment Fund is available to pay a fee award only if there is *no* agency over which the plaintiffs can be said to have prevailed under EAJA.

## B.

We therefore turn to the question whether "any agency" may be held responsible for the *Cienega Gardens* fee award. As a general rule, the "agency over which the party prevails" under EAJA will be the agency whose regulatory interest was at stake in the litigation and whose actions or policies are successfully challenged in the court action. This interest may be identified by the fact that the agency took affirmative action against the prevailing party, in the form of a regulation or administrative ruling, or it may be identified by the fact that the agency had statutory authority over the regulatory program that the prevailing party successfully challenged. In a typical case, that agency may be named as the plaintiff or the defendant, but EAJA does not require that the agency itself be specifically named as a party. These considerations, as we explain, point towards the conclusion that HUD is the agency responsible under EAJA.

EAJA provides that a court shall award fees upon finding that the "position of the United States" is not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). EAJA defines the "position of the United States" to mean "in addition to the position taken by the United States in the civil action, *the action or failure to act by the agency upon which the civil action is based.*" *Id.* § 2412(d)(2)(D) (emphasis added). It further provides that "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record *(including the record with respect to the action or failure to act by the agency upon which the civil action is based)* which is made in the civil action for which fees and other expenses are sought." *Id.* § 2412(d)(1)(B) (emphasis added). Congress added these latter two provisions in the same 1985 amendment in which it clarified that agencies could not use the Judgment Fund to pay fee awards assessed against them under EAJA. Pub. L. No. 99-80, §§ 2(b), 2(c)(2), 99 Stat. 183, 184–85. Before the

1985 amendment, several courts had interpreted EAJA to prohibit consideration of the actions of the agency that preceded the lawsuit.[5] Congress thus made clear through the 1985 amendment that EAJA predicates responsibility for the fee award not simply on the litigating position of the United States, but on the course of regulatory action, or inaction, giving rise to the position of the United States over which the private litigants prevailed.

This definition of the "position of the United States" is consistent with the purpose underlying EAJA. As the Supreme Court has explained, "Congress passed the EAJA in response to its concern that persons 'may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights.'" *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989) (quoting Pub. L. No. 96-481, § 202(a), 94 Stat. 2321, 2325 (1980)). Through EAJA, Congress sought "to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States." Pub. L. No. 96-481, § 202(b)(1), 94 Stat. at 2325. Congress sought therefore to reduce the cost, and consequent deterrent effect, of challenging or defending against unreasonable government action. *Hudson*, 490 U.S. at 883 ("When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.") (quoting S. Rep. No. 96-253, at 5 (1979)). By the same token, by transferring the costs of litigation to the agency responsible for the subject matter of the litigation and whose actions or policies are under challenge, EAJA would deter the "unreasonable governmental action" that gave rise to litigation in the first place.

EAJA further recognizes that the agency responsible for the fee award need not be a named party to the lawsuit. EAJA provides that a "prevailing party" may win fees, but the statute contains no corresponding requirement that the agency "over which the party prevails" have been a named party to the litigation. *See* 28 U.S.C. § 2412(d)(1)(A), (d)(4). Indeed, EAJA recognizes that fees may be awarded in any action "brought by or against *the United States*," *id.* § 2412(d)(1)(A) (emphasis added), which is defined to include not only the government as a named party but also "any agency and any official of the United States acting in his or her official capacity." *Id.* § 2412(d)(2)(C). In assigning responsibility for the payment of fee

---

[5] *See Spencer v. NLRB*, 712 F.2d 539, 546–57 (D.C. Cir. 1983) (concluding that "'the position of the United States,' for the purposes of the Act, means the arguments relied upon by the government in litigation," not the underlying action of the government); *Gava v. United States*, 699 F.2d 1367, 1371 (Fed. Cir. 1983) ("In determining an application for attorney's fees under the Act, the inquiry is directed to the justification for the government's litigating position before the court, not the justification for the government's administrative action that prompted the suit."). *But see Natural Res. Def. Council v. EPA*, 703 F.2d 700, 707 (3d Cir. 1983) ("We hold that the word 'position' refers to the agency action which made it necessary for the party to file suit.").

awards, however, Congress stated that the fees shall be paid by "any agency over which the party prevails," *id.* § 2412(d)(4), and not by "the United States" or by one of its officials. This difference in language confirms that the "agency over which the party prevails" will include the agency whose conduct led to "the position of the United States," even if the agency was not named as a party to the litigation.

Applying these principles to the case at hand, we believe that EAJA assigns responsibility for the fee award in the *Cienega Gardens* case to HUD, the agency charged with administering the federal statutory scheme in question. HUD issued the regulations in 1970 that were incorporated into plaintiffs' mortgage notes and initially gave them the right to prepay their HUD-insured loans after twenty years and be released from the affordability restrictions. Following Congress's enactment of ELIHPA and LIHPRHA, HUD again issued regulations that implemented those statutes and recognized what the Federal Circuit held to be the loss of plaintiffs' prepayment rights. Plaintiffs' successful takings claims were predicated on the uncompensated deprivation of property rights created and rescinded under this HUD-administered regulatory scheme. Under these circumstances, we believe that the plaintiffs are most reasonably said to have prevailed over HUD.

In opposition to this conclusion, HUD maintains, and you agree, that HUD should not be deemed the agency responsible for the fee award, because HUD lacked any institutional interest in the litigation surrounding plaintiffs' takings claim. HUD Memo at 4; DOJ Letter at 7. HUD took no direct action against any of the plaintiffs, who did not file any petition with HUD, but instead brought suit in the Court of Claims following the enactment of ELIHPA and LIHPRHA. In addition, plaintiffs' takings claims did not challenge any HUD regulation or administrative decision, and the outcome of the litigation—a monetary award compensating the plaintiffs for their losses—did not affect or alter any existing HUD program. HUD Memo at 4; DOJ Letter at 7. HUD acknowledges that it had an institutional interest in the earlier stages, where the plaintiffs asserted claims for breach of contract and administrative violations. HUD Memo at 7. The agency maintains, however, that once the dismissal of those claims was upheld on appeal, HUD had no remaining interest in the litigation, and specifically had no institutional interest in the third appeal that was the subject of the fee award. At that point, "the plaintiffs' only remaining claim . . . was that the enactment of LIHPRHA constituted a temporary regulatory taking of a property right." *Id.* The governmental entity that effectuated the unconstitutional taking was Congress, which enacted the statutes that of their own force deprived the plaintiffs of their property interests. DOJ Letter at 10. Under this view, HUD itself lacked any institutional interest in the litigation by the time of the fee award, and therefore, it should not be deemed to be the agency over which the plaintiffs prevailed.

We disagree, however, with the suggestion that HUD lacked a regulatory interest in plaintiffs' takings claims. HUD acknowledges its "institutional interest" in

the breach of contract and administrative law claims that arose out of its actions in granting the prepayment rights and then in restricting prepayment under ELIHPA and LIHPRHA. HUD Memo at 7. We see no reason why this institutional interest would not extend to the takings claims that arose out of the very same actions.[6] The *Cienega Gardens* litigation directly challenged the constitutionality of the HUD-administered changes to the low-income housing program. HUD issued the regulations that originally set the terms of plaintiffs' prepayment rights, and when Congress enacted ELIHPA and LIHPRHA, HUD was not a passive observer to events. Rather, HUD issued regulations and other guidance recognizing the loss of the plaintiffs' prepayment rights and setting the terms under which HUD would approve prepayment in the future. By the time of the Federal Circuit's judgment, Congress may have relaxed the restrictions on prepayment through a 1996 statute, *see supra* p. 231, but that was merely a fortuity. Had Congress not altered the statutory scheme, the Federal Circuit decision likely would have led HUD to alter its regulatory policies to prevent the United States from being exposed to continuing liability based on regulatory takings claims.

It is true that the *Cienega Gardens* plaintiffs brought suit against the United States in the Court of Claims without first petitioning HUD for the right to prepay the mortgages in question. HUD Memo at 7. The Federal Circuit found that such an action would have been futile, however. *Cienega Gardens*, 265 F.3d at 1248. HUD's regulations provided that plaintiffs could only exercise their prepayment right if HUD was satisfied that the plaintiffs' plan of action would not unduly diminish the availability of low-income housing.[7] Plaintiffs contended that they could not meet that standard, and the Federal Circuit found the facts underlying this contention to be undisputed. *Cienega Gardens*, 265 F.3d at 1248. Plaintiffs' successful takings claim amounted to a declaration that the existing HUD regulations reflected an uncompensated taking of their prepayment rights. The fact that the remedy in the case was compensation, rather than injunctive relief directed at

---

[6] Indeed, as HUD notes, the agency's attorneys appeared "of counsel" on the government's briefs throughout the litigation, including on the third appeal. HUD Memo at 7. We do not regard the participation of counsel as a basis *ipso facto* for assigning responsibility to HUD, but the participation of HUD attorneys does confirm that HUD constituted the agency with the specific regulatory interest in the *Cienega Gardens* litigation.

[7] HUD states that it "never promulgated regulations to enforce the restrictions on prepayment contained in ELIHPA and LIHPRHA. HUD's regulations permitting prepayment after twenty years remained in effect throughout the time when prepayment was restricted by those statutes." HUD Memo at 2. HUD, however, issued multiple sets of regulations to implement ELIHPA and LIHPRHA, *see supra* p. 218 & n. 1, including regulations to implement the "plan of action" restriction on prepayment. *See* 24 C.F.R. § 248.221(b)(1)(i) (1993) ("The [Federal Housing] Commissioner may approve a plan of action that involves termination of the low income affordability restrictions only upon a written finding that . . . [t]he supply of vacant, comparable housing is sufficient to ensure that the prepayment will not materially affect . . . [t]he availability of decent, safe and sanitary housing affordable to lower income and very low income families in the area . . . .").

the agency, does not alter the fact that HUD's actions and policies were at issue in the litigation.

In addition to suggesting that HUD lacked a regulatory interest in the takings claim, you and HUD suggest that HUD should not be held responsible for the fee award on the ground that the agency itself did not engage in any unreasonable action to cause plaintiffs' loss. HUD Memo at 7; DOJ Letter at 9. The Federal Circuit described Congress as the responsible actor in taking plaintiffs' property through the enactment of ELIHPA and LIHPRHA. *See, e.g.*, *Cienega Gardens*, 331 F.3d at 1328 (describing the questions on the appeal as whether plaintiffs' property interest was "taken by the enactment of ELIHPA and LIHPRHA" and whether "the regulatory restriction in the statutes" was significant enough to require compensation). Under this view, HUD's regulatory actions amounted to nothing more than implementing the directives of ELIHPA and LIHPRHA. HUD did not add to plaintiffs' injury, and HUD lacked any statutory authority to determine whether those federal laws constituted a taking or to provide the plaintiffs with payment for any lost property interest. Because HUD took no wrongful action, you maintain that "making HUD pay EAJA fees, under the circumstances, would not promote Congress's primary reason for making agencies liable for EAJA fees: to penalize unreasonable agency action." DOJ Letter at 8.

We do not disagree that HUD did nothing more than carry out its statutory obligations in this case, yet that fact does not relieve HUD of its responsibilities under EAJA for fees and costs incurred by plaintiffs who successfully challenged the HUD-administered program. Congress may be the entity most responsible for the regulatory takings recognized by the Federal Circuit, but Congress clearly cannot be the "agency over which the plaintiffs prevailed." *See* 5 U.S.C. § 551(1)(A) (excluding Congress from the definition of "agency" under the Administrative Procedure Act). It is no doubt true that "Congress's primary reason for making agencies liable for EAJA fees" is "to penalize unreasonable agency action." DOJ Letter at 8. Yet EAJA does not require a specific finding of fault before an agency may be held responsible for the award; it requires only a showing that the "position of the United States" was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Upon finding that the "position of the United States" is not "substantially justified," EAJA requires payment from the "agency over which the plaintiffs prevailed" without regard to whether the agency properly or improperly exercised its discretion.

For the above reasons, we conclude that HUD does constitute the agency over which the plaintiffs prevailed in *Cienega Gardens*. The agency responsible to pay a fee award against the United States under EAJA is the agency whose regulatory interest is at stake in the litigation. This interest may be identified by the fact that the agency took affirmative action against the prevailing party, in the form of a regulation or administrative ruling, or it may be identified by the fact that the agency had statutory authority over the regulatory program that the prevailing

party successfully challenged. By either measure, HUD would constitute the agency responsible to pay the fee award to the *Cienega Gardens* plaintiffs.

## C.

Our conclusion that HUD bears responsibility for the fee award does not end our analysis, because EAJA provides for payment by "*any* agency over which the party prevails," suggesting that more than one agency may bear responsibility. Accordingly, we must consider whether another agency, namely DOJ, should be deemed jointly responsible. HUD suggests that if the plaintiffs prevailed over any agency, it was DOJ, because "DOJ, not HUD, was entirely responsible for the arguments made and briefs filed in the third appeal" for which the plaintiffs were awarded fees. HUD Memo at 7. HUD further points out that DOJ, not HUD, had the ability to settle the litigation. *Id*.; *see* 28 U.S.C. § 2414 (2000). This would be true in most cases involving the federal government, however. With the exception of independent agencies that have their own litigating authority, the Attorney General has the statutory authority to control the course of any litigation brought by or against the United States or one of its agencies. 28 U.S.C. § 516 (2000). We do not believe that Congress intended for DOJ to be deemed the "agency over which the party prevails" under EAJA merely by virtue of its statutorily mandated role as litigating counsel.[8] If we were to adopt such an interpretation, DOJ would become responsible for all fee awards under EAJA (except those involving independent agencies), even when the plaintiff has named an agency like HUD as the defendant and has clearly challenged a specific agency action as unreasonable. This interpretation would render largely superfluous the 1985 amendment, in which Congress made clear that the "position of the United States" includes more than the arguments advanced in the briefs; it includes also the "action or failure to act . . . upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

Our view that the regulating agency, and not DOJ, would constitute the agency subject to a fee award is consistent with fee-shifting principles and fee-shifting statutes that govern private litigation, which generally impose fee awards on the parties to the lawsuits, not on the lawyers who represent them.[9] Indeed, parties

---

[8] We need not address whether our conclusion would be any different in a case in which DOJ attorneys engaged in acts of litigation misconduct or advanced a legal argument contrary to the views of the agency involved. We understand that there was no such disagreement or misconduct in this case.

[9] Some fee-shifting statutes specifically identify the party responsible for the fee award. *See, e.g.*, 29 U.S.C. § 2617(a)(3) (2000) (Family and Medical Leave Act) ("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action *to be paid by the defendant*.") (emphasis added); 42 U.S.C. § 2000e-5(k) (2000) (Title VII) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and *the Commission and the United States shall be liable for costs the same as a private person*.") (emphasis added). Others speak

bear responsibility for fee awards in the same manner that they do for judgments. It is the exceptional circumstance when a statute or rule specifically identifies that counsel, in addition to the litigant, may be responsible for sanctions or fees.[10] DOJ's authority to direct litigation in the federal courts may provide it with somewhat greater control over the "position of the United States" than a typical attorney would have over the position of the client, yet we see no basis in EAJA to suggest that Congress intended to adopt a novel rule, where counsel would be subject to liability based upon a good faith defense of the position of their clients. Rather, we believe that EAJA, by providing that the fees shall be paid by the "agency over which the party prevails," provides that the responsible agency— whether or not named as a party adverse to the prevailing party—would be the agency that functions as the relevant adversary for fee-shifting purposes, because the litigation implicates its regulatory interests and challenges the agency's actions or policies.[11]

## III.

For the reasons given, we conclude that HUD constitutes the agency over which the *Cienega Gardens* plaintiffs prevailed under EAJA. Because EAJA provides for payment, the Judgment Fund is not available and, therefore, the award must come out of HUD appropriations.

STEVEN A. ENGEL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

in terms of the "prevailing party," but the fee judgment falls on the losing party, not the losing party's counsel. *See, e.g.*, 15 U.S.C. § 1117(a) (2000) (Lanham Act) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

[10] *See, e.g.*, Fed. R. Civ. P. 37(a)(4)(A) (providing in discovery that "the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees").

[11] We note that our view does not mean that DOJ could never be the "agency over which the party prevails." A different case would be presented if DOJ's own actions or policies were challenged in the litigation. *See* Memorandum for Stephen R. Colgate, Assistant Attorney General, Justice Management Division, from Richard Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Payment of Attorney's Fees Under the Equal Access to Justice Act* (Aug. 25, 1994) (acknowledging DOJ's responsibility to pay EAJA fee award where DOJ had intervened in bankruptcy litigation to challenge, unsuccessfully, the constitutionality of the Bankruptcy Amendments and Federal Judgeship Act of 1984).